SIXTH DIVISION
December 15, 2006

No. 1-05-3175

| | | |
|---|---|---|
| NEDELJKA BAJALO, | ) | |
| | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County, Illinois, |
| | ) | County Department, |
| | ) | Law Division. |
| | ) | |
| v. | ) | No. 05 L 383 |
| | ) | |
| | ) | |
| NORTHWESTERN UNIVERSITY, | ) | Honorable |
| | ) | Ronald F. Bartkowicz, |
| Defendant-Appellant. | ) | Judge Presiding. |

JUSTICE JOSEPH GORDON delivered the opinion of the court:

Plaintiff, Nedeljka Bajalo, brought an action for retaliatory discharge against defendant, Northwestern University, predicated upon defendant's failure to renew her employment contract. Defendant moved for judgment on the pleadings on ground that plaintiff failed to state a cause of action because Illinois law does not recognize a claim for retaliatory discharge based upon the failure to renew an expired employment contract. The circuit court denied defendant's motion on the pleadings, and certified the following question for interlocutory appeal (155 Ill. 2d R. 308): "May a contract employee who engaged in protected whistle blowing activity bring a cause of action for retaliatory discharge when the employer fails to renew the employee's written contract [?]"

## I. BACKGROUND

On January 12, 2005, plaintiff filed a complaint stating a single state-law claim for retaliatory discharge. The complaint alleges the following pertinent facts. Defendant is an institution of higher education that engages in medical research, substantially funded by the federal government. Some of defendant's medical research involves experiments performed on live laboratory animals through its Center for Comparative Medicine (Center). As such, defendant must comply with the Federal Animal Welfare Act (Act) (7 U.S.C. §2131 *et seq*. (2002)), which aims "to insure that 'animals intended for use in research facilities *** are provided humane care and treatment'" (7 U.S.C. §2131(1) (2002)). Under the Act, the Secretary of Agriculture "promulgat[es] standards" governing the "humane handling, care, treatment, and transportation of animals by *** research facilities." 7 U.S.C. §2143(a) (2002). As a research facility falling under the purview of the Act defendant was required to register with the Secretary of Agriculture (7 U.S.C. §2136 (2002)) and to establish an oversight committee to ensure that the rules and regulations promulgated by the Secretary were being enforced (7 U.S.C. §2143(b)(1) (2002)). As a result, defendant established the Northwestern University Animal Care and Use Committee (NUACUC) to review and approve "protocols for the humane care *** of animals" and "oversee all animal use" at defendant's facilities.

The complaint further alleges that plaintiff, a veterinarian, was hired by defendant on May 1, 2000, to work for a one-year period as a senior research associate at defendant's Center. The complaint alleges that defendant renewed plaintiff's appointment for a second one-year period beginning in May 1, 2001. Defendant renewed plaintiff's contract for a third one-year

period beginning May 1, 2002. According to the complaint, plaintiff performed "all terms, conditions and requirements of her position in a satisfactory manner."

The complaint further alleges that beginning in September 2001, plaintiff became concerned with "billing irregularities" and improper laboratory procedures which she believed jeopardized the health and welfare of the animals, as well as the quality of research being performed at the Center. For the next two years, plaintiff continued to address these concerns, *inter alia*, to members of the NUACUC committee, her supervisors, her department chair, the vice president of research, the director of finances and administration, inspectors of the United States Department of Agriculture, and defendant's provost.

According to the complaint, on January 9, 2003, plaintiff received a letter of insubordination from her supervisor. On January 29, 2003, plaintiff informed the United States Department of Health and the National Institute of Health, in writing, of her concerns regarding animal care and caretaker safety in defendant's laboratories. On February 6, 2003, defendant informed plaintiff that it would not renew her written contract when it expired on April 30, 2003. The complaint further alleges that on the same day defendant "terminated" plaintiff by telling her that she should not return to the Center or either campus of defendant for the remainder of her appointment. Moreover, according to the complaint, in July 2003, plaintiff was offered a position in defendant's gastroenterology laboratory, but defendant's human resources department denied the laboratory's request to employ plaintiff and informed the laboratory that the Center would not "grant plaintiff any access to [its] animal care facility."

The complaint alleges that plaintiff was discharged from her employment in retaliation

for exercising her rights under the federal Animal Welfare Act. The complaint specifically alleges that plaintiff was discharged because she reported alleged violations of the Act to her supervisors, to the United States Department of Agriculture and to the National Institute of Health. Some of the alleged violations that plaintiff reported included inadequate training of laboratory personnel and lack of available medicine to relieve the unnecessary pain inflicted on research animals. 9 C.F.R. §§2.32(a), (b), (c)(1) through (c)(4) (1994). According to the complaint, under the Animal Welfare Act:

> "Training and instruction of personnel must include guidance in at least the following areas *** [m]ethods whereby deficiencies in animal care and treatment are reported, including deficiencies in animal care and treatment reported by an employee of the facility. No facility employee, committee member, or laboratory personnel shall be discriminated against or be subject to any reprisal for reporting violations of any regulation or standards under the Act. 9 C.F.R. § 2.32(c)(4)."

On April 1, 2005, defendant filed its answer, denying that it discharged plaintiff and asserting that plaintiff continued to be employed until the expiration of her contract on April 30, 2003. In support of this contention, defendant alleged that it continued to pay full salary and benefits to plaintiff through the expiration of her employment contract. Defendant further denied that it retaliated against plaintiff and instead alleged that it elected not to renew plaintiff's employment contract because she had demonstrated "repeated instances of flagrant insubordination towards her supervisors."

On May 6, 2005, defendant moved for judgment on the pleadings pursuant to section 2-

No. 1-05-3175

615 (e) of the Code of Civil Procedure (Code) (735 ILCS 5/2-615(e) (West 2002)) for failure to state a claim upon which relief may be granted. At a hearing on that motion, defendant argued that Illinois law does not recognize a claim of retaliatory discharge for the failure to renew an expired employment contract.

On August 26, 2005, the trial court denied defendant's motion for judgment on the pleadings. In doing so, the court held that in "those situations in which *** an employee has been involved in a year-to-year contract renewal and if the employee is able to establish that the failure to renew the contract was for exercising some protected right, that the doctrine of retaliatory discharge would be applicable." Recognizing that "this is a new and novel situation," the trial court certified the following question for interlocutory appeal pursuant to Supreme Court Rule 308 (155 Ill. 2d R. 308): "May a contract employee who engaged in protected whistleblowing activity bring a cause of action for retaliatory discharge when the employer fails to renew the employee's written contract [?]" Following a supervisory order from our supreme court, we granted leave to appeal and now address this question.

As with all questions of law, we review questions presented for interlocutory appeal under a *de novo* standard. United General Title Insurance Co. v. AmeriTitle, Inc., 365 Ill. App. 3d 142, 147, 847 N. E. 2d 848, 852 (2006). In an interlocutory appeal, the court's examination is limited to the questions certified by the trial court, and a reviewing court will ordinarily not expand the certified question under review to answer other questions that could have been included but were not. United General Title, 365 Ill. App. 3d at 147, 847 N. E. 2d at 852.

5

No. 1-05-3175

## II. ANALYSIS

In Illinois, in order to establish a tort claim for retaliatory discharge, a plaintiff must show (1) that she has been discharged; (2) in retaliation for her activities; and (3) that the discharge violates a clear mandate of public policy. Zimmerman v. Buchheit of Sparta Inc., 164 Ill. 2d 29, 35, 645 N. E. 2d 877, 881 (1995). Defendant's primary assertion is that the failure to renew a fixed-term employment contract does not equate to a "discharge." Plaintiff contends that the purpose of retaliatory discharge is to protect an employee's right to enforce compliance by the employer with public policy and that the term "discharge" should be given a liberal interpretation so as not only to include the termination or dismissal of at-will employees, but also the failure to renew a contract of an ongoing employee. We disagree.

The tort of retaliatory discharge has a relatively short and unique history in our state. After first being introduced, the tort followed a short period of expansion, but was quickly curtailed. Illinois law has long upheld the "at-will" employment doctrine under which an employer may terminate an employee at any time with or without cause. Buckner v. Atlantic Plant Maintenance Inc., 182 Ill. 2d 12, 19, 694 N. E. 2d, 565, 569 (1998).

The tort of retaliatory discharge has developed as an exception to this rule and was first recognized in Kelsay v. Motorola, Inc., 74 Ill. 2d 172, 182, 384 N. E. 2d 353, 357 (1978), where the supreme court held that there was a cause of action for retaliatory discharge for employees who were terminated in retaliation for filing worker's compensation claims. In that case, the court noted that the public policy underlying the Workers' Compensation Act would be seriously undermined if employers were allowed "to discharge, or threaten to discharge," employees who

6

sought relief under the Act. Kelsay, 74 Ill. 2d at 182, 384 N. E. 2d at 357. Moreover, the court held that compensatory damages under contract law were ineffective in deterring the employer's otherwise absolute power to terminate at-will employees and provided that, under the new tort, a claimant could seek punitive damages. Kelsay, 74 Ill. 2d at 186-187, 384 N. E. 2d at 359-60.

Soon thereafter, in Palmateer v. International Harvester Co., 85 Ill. 2d 124, 133, 421 N. E. 2d 876, 880 (1981), the supreme court extended the tort of retaliatory discharge beyond its workers' compensation origins to provide a remedy to an employee fired for reporting the criminal activity of a coworker. In expanding the tort to include whistleblowing activity, the court held that "[t]he foundation of the tort of retaliatory discharge lies in the protection of public policy."[1] Palmateer, 85 Ill. 2d at 133, 421 N. E. 2d at 880. In Palmateer, the court also acknowledged the shortcomings of the mutuality theory of at-will employment, specifically the dichotomy between "large corporations conducting specialized operations" and "relatively immobile workers who often have no other place to market their skills." Palmateer, 85 Ill. 2d at 129, 421 N. E. 2d at 878. The court recognized that in an age of rising corporations, the employer and employee no longer "stand on equal footing," and that the policy driving the tort of retaliatory discharge should be to strike a proper balance "among the employer's interest in operating a business efficiently and profitably, the employee's interest in earning a livelihood, and society's interest in seeing its public policies carried out." Palmateer, 85 Ill. 2d at 129, 421 N. E. 2d at 878.

---

[1] Since then, the "whistleblower" cause of action has been codified in the Illinois Whistleblower Act (740 ILCS 174/15 (West 2004)), effective January 1, 2004.

In Midgett v. Sackett-Chicago, Inc., 105 Ill. 2d 143, 150, 473 N. E. 2d 1280, 1284 (1984), the supreme court further extended the retaliatory discharge cause of action to unionized employees, by holding that an action for retaliatory discharge was available to them, independently of their collective-bargaining agreements. In doing so, the court noted:

> "[T]here is no reason to afford a tort remedy to at-will employees[,] but to limit union members to contractual remedies under their collective bargaining agreements. [Citation.] Generally, if a union employee's grievance goes to arbitration and the arbitrator does not find just cause for the employee's discharge, the remedy will be simply job reinstatement and full back pay. [Citation.] If there is no possibility that an employer can be liable in punitive damages, not only has the employee been afforded an incomplete remedy, but there is no available sanction against a violator of an important public policy of the State. It would be unreasonable to immunize from punitive damages an employer who unjustly discharges a union employee, while allowing the imposition of punitive damages against an employer who unfairly terminates a nonunion employee. The public policy against retaliatory discharges applies with equal force in both situations." Midgett, 105 Ill. 2d at 150, 473 N. E. 2d at 1284 .

Since Midgett, however, the supreme court has declined to expand the tort any further. Specifically, in Barr v. Kelso -Burnett Co., 106 Ill. 2d 520, 528, 478 N. E. 2d 1354, 1356-57 (1985), the supreme court refused to extend the tort to encompass discharge for the exercise of the right to free speech, because the plaintiff failed to allege a violation of a clearly mandated

public policy, as "[t]here [was] nothing in either the Illinois Constitution or the Illinois Human Rights Act to mandate the inclusion of the right of free speech into those rights which are applicable to the employer-employee relationship." In confining the scope of retaliatory discharge causes of action, the court noted: "[T]his court has not, by its Palmateer and Kelsay decisions, 'rejected a narrow interpretation of the retaliatory discharge tort' and does not 'strongly support' the expansion of the tort." Barr, 106 Ill. 2d at 525, 478 N. E. 2d at 1356.

Subsequent decisions of the supreme court further confined and narrowed the scope of the tort, by their refusal to recognize a claim in any injury short of actual discharge. In Hartlein v. Illinois Power Co., 151 Ill. 2d 142, 163, 601 N. E. 2d 720, 730 (1992), the supreme court declined to expand the tort to encompass "constructive discharge." In that case, plaintiff was injured while working as an apprentice lineman and began receiving disability benefits in accordance with the Illinois Workers' Compensation Act. Hartlein, 151 Ill. 2d at 147, 601 N. E. 2d at 722-23. After continued vocational therapy showed that plaintiff could not be rehabilitated to such an extent as would allow him to be able to continue working as a lineman, defendant directed plaintiff to engage in a job search, but indicated that it had no intention of discharging him. Hartlein, 151 Ill. 2d at 161, 601 N. E. 2d at 729. Plaintiff acknowledged that he would not accept another job by means of such a search, unless it was comparable to the job he had with defendant, but asserted that the retaliatory discharge cause of action should apply to the "discharge process." Hartlein, 151 Ill. 2d at 161, 601 N. E. 2d at 729. The supreme court declined to extend the tort to the circumstances of this case and held that plaintiff had not stated a claim of retaliatory discharge because mere advice to seek other employment does not constitute

No. 1-05-3175

actual discharge. <u>Hartlein</u>, 151 Ill. 2d at 162, 601 N. E. 2d at 729.

Following the same rationale, in <u>Zimmerman</u>, 164 Ill. 2d at 37-38, 39, 645 N. E. 2d at 881-82, the supreme court further narrowed the scope of the tort by refusing to extend the cause of action to retaliatory demotions, suspensions or any "circumstances in which an employee suffers a loss of employment status or income or both, but is not terminated form her employment altogether." In that case, plaintiff alleged that in retaliation for seeking workers compensation benefits, her employer demoted her and reduced her work time. <u>Zimmerman</u>, 164 Ill. 2d at 31, 645 N. E. 2d at 878. In refusing to extend the discharge element of the tort to these circumstances, the court in <u>Zimmerman</u> explained that it did not wish to "dilute the discharge requirement." <u>Zimmerman</u>, 164 Ill. 2d at 39, 645 N. E. 2d at 882.

Appellate court decisions have similarly followed this retrenchment in the retaliatory discharge cause of action, refusing to extend it to any employment action short of actual discharge. See <u>Graham v. Commonwealth Edison Co.</u>, 318 Ill. App. 3d 736, 742, 742 N. E. 2d 858, 864 (2000) (granting summary judgment to employer on plaintiff's allegations that after he made complaints about safety violations at employer's nuclear power station, he was demoted from his managerial position to a position with lower pay and no supervisory duties, that he was later transferred and denied promotions and all meaningful job responsibilities; court specifically held that "discharge" in an employment context is commonly understood to mean "the release, dismissal or termination of an employee" and does not encompass demotions); <u>Welsh v. Commonwealth Edison Co.</u>, 306 Ill. App. 3d 148, 153, 713 N. E. 2d 679, 683 (1999) (holding that nuclear power plant employees could not maintain action for constructive retaliatory

10

discharge based on allegations that they were demoted, placed in new jobs at different locations and suffered losses in pay and deterioration of working conditions after they reported safety concerns to management and to Nuclear Regulation Commission); Hindo v. University of Health Sciences/Chicago Medical School, 237 Ill. App. 3d 453, 460, 604 N. E. 2d 463, 468 (1992) (expressly rejecting retaliatory demotion as a cause of action where medical school professor alleged that he was demoted in retaliation for reporting fraudulent activities of school employees at affiliated hospital); Melton v. Central Illinois Public Service Co., 220 Ill. App. 3d 1052, 1056, 581 N. E. 2d 423, 425 (1991) (rejecting plaintiffs' claim that a "threat to discharge or discipline short of discharge," stated a valid cause of action, where plaintiffs were taking absences to obtain medical treatment for job-related injuries covered by the workers' compensation statute); Veit v. Village of Round Lake, 167 Ill. App. 3d 350, 351-52, 521 N. E. 2d 145, 146-47 (1988) (holding that Illinois does not recognize a claim of retaliatory harassment where plaintiff alleged that he was placed in a less desirable work rotation, required to work on holidays, denied opportunities to attend seminars to further his education, refused vacation time, and was generally abused and mistreated in retaliation for filing a worker's compensation claim); Stuzman v. Board of Education of the City of Chicago, 171 Ill. App. 3d 670, 675, 525 N. E. 2d 903, 907 (1988) (concluding that a retaliatory discharge cause of action does not encompass a 24-hour retaliatory suspension of a school principal who was allegedly disciplined for his failure to cooperate with the school's legal department); Scheller v. Health Care Services Corp., 138 Ill. App. 3d 219, 225, 485 N. E. 2d 26, 29-30 (1985) quoting Beye v. Bureau of National Affairs, 59 Md. App. 642, 653, 477 A. 2d 1197, 1203 (1984) (refusing to extend the tort of retaliatory discharge to

situations where an 'employer has deliberately caused or allowed the employee's working conditions to become so intolerable that a reasonable person in the employee's place would have felt compelled to resign')[2]; New Horizons Electronics Marketing, Inc. v. Clarion Corporation of America, 203 Ill. App. 3d 332, 336, 561 N. E. 2d 283, 285 (1990) (holding that an independent contractor who alleged that it was terminated from its position as sales representative for defendant, for its refusal to participate in illegal bribes and kickbacks could not maintain an action for retaliatory discharge because the court has not "expanded the tort outside of the *employment* setting," (emphasis in original) and because plaintiff was not an employee but an independent contractor).

In light of the foregoing decisions following Barr, it is readily apparent that the interest in protecting compliance with public policy espoused by Kelsay, Palmateer and Midgett will not suffice to encompass retaliatory conduct by an employer short of actual discharge. Thus, in Illinois the only decision involving an action for retaliatory discharge for a failure to renew an employment contract has held that the tort of retaliatory discharge does not encompass the failure to rehire. See Krum v. Chicago National League Ball Club, Inc., 365 Ill. App. 3d 785, 789-90, 851 N. E. 2d 621, 624-25 (2006). The rationale for this trend was best evinced by the court in Zimmerman:

> In our view [the expansion of the doctrine of retaliatory discharge] would replace the well-developed element of discharge with a new, ill-defined, and potentially

---

[2]The decision in Scheller was noted with approval by our supreme court in Hinthorn v. Roland's of Bloomington, Inc., 119 Ill. 2d 526, 530-31, 519 N. E. 2d 909, 911-12 (1988).

all-encompassing concept of retaliatory conduct or discrimination. The courts then would be called upon to become increasingly involved in the resolution of workplace disputes which center on employer conduct that heretofore has not been actionable in common law or by statute. Zimmerman, 164 Ill. 2d at 39, 645 N. E. 2d at 882.

In Krum, 365 Ill. App. 3d at 789-90, 851 N. E. 2d at 624-25, this court affirmed the dismissal of a claim for retaliatory discharge by a plaintiff whose fixed-term employment contract expired without renewal. Plaintiff, Krum, was an assistant athletic trainer for the Chicago Cubs working under a one-year employment contract. Krum alleged that following his complaints to management regarding violations of the Illinois Athletic Trainers Practice Act (225 ILCS 5/4 (West Supp. 2005)), the Cubs "terminated" him in retaliation for his complaints, even though they continued to pay his salary until the date his employment contract expired. Krum, 365 Ill. App. 3d at 787, 851 N. E. 2d at 623. The court held that consistent with the supreme court's desire to restrict the common law of retaliatory discharge, "absent a statutory basis, contractual employees, such as Krum, cannot bring a claim for retaliatory discharge when employers fail to renew an employment contract." Krum, 365 Ill. App. 3d at 790, 851 N. E. 2d at 625. In doing so, the court noted that the Athletic Trainers Practice Act, upon which Krum relied, did not contain any language "prohibiting retaliatory employment conduct," and thus dismissed plaintiff's claim. Krum, 365 Ill. App. 3d at 790, 851 N. E. 2d at 625. In light of the clear trend of retrenchment reflected in our supreme court decisions since Barr, we agree with the position taken in Krum.

13

In addition to <u>Krum</u>, other jurisdictions have refused to extend the common law retaliatory discharge cause of action to encompass failures to renew a contract. In <u>Luethans v. Washington University,</u> 894 S.W.2d 169, 171-72 (Mo. 1995), a case factually very similar to the case at bar, the Missouri Supreme Court affirmed summary judgment for the defendant where plaintiff pled a case for wrongful discharge but the uncontroverted facts established that he was a contract employee whose contract term had expired.[3] In that case, plaintiff was a veterinarian hired by defendant Washington University on an annual appointment basis. <u>Luethans</u>, 894 S.W.2d at 170. After years of continuous appointment by the school, Washington University informed plaintiff by letter that it would not renew his latest one-year employment contract upon expiration. <u>Luethans</u>, 894 S.W.2d at 170. Plaintiff filed a claim of retaliatory discharge against the university, alleging that defendant had retaliated against him in violation of the Animal Welfare Act for his reporting abuses of laboratory animals to his superiors and discussing the possibility of reporting the abuse to outside parties.[4] <u>Luethans</u>, 894 S.W.2d at 170. The

---

[3]Although at the time of the <u>Luethans</u> decision, Missouri had not expressly defined or adopted the public policy exception to the at-will employment doctrine, the court noted that numerous Missouri appellate courts had adopted the doctrine and concluded that "[f]or the purposes of this opinion, we assume that the public policy exception to the at-will employment doctrine exists." <u>Luethans</u>, 894 S.W.2d at 171-72. Since <u>Luethans</u>, the Missouri Supreme Court has adopted the doctrine with *en banc* approval (see <u>McCoy v. Caldwell County</u>, 145 S.W.3d 427, 429 (Mo. 2004)).

[4]We note that, although just as in this case, the plaintiff in <u>Leuthans</u> alleged that he was

No. 1-05-3175

Missouri Supreme Court affirmed judgment for the university as a matter of law because plaintiff had pled his cause of action under the theory of wrongful discharge, whereas his employment with the university had expired under the employment contract. Luethans, 894 S.W.2d at 172. The court rejected plaintiff's argument that the failure to renew an employment contract, "especially one from year to year," should be treated the same as the discharge of an employee at will. In doing so, the court noted:

> "[Defendant] ignores the significant difference in the relationship. An employer and an employee at will have an indefinite agreement that the employee will work only so long as both parties wish the relationship to continue. Either can end the relationship at any time without cause or liability, so long as the act of discharge is not otherwise 'wrongful.' A contractual employee, however, has a relationship with the employer that is controlled either by express or implied terms. Neither the employee nor the employer can vary those terms without cause or liability [that] may result." Luethans, 894 S.W.2d at 172.

Similarly, the California Court of Appeals has refused to recognize a claim for retaliatory discharge by a contractual employee. In Daly v. Exxon Corp., 55 Ca. App. 4th 39, 45, 63 Cal. Rptr. 2d 727, 730 (1997), that court held that an employee could not state a common law retaliatory discharge cause of action for her employer's failure to renew her fourth consecutive

retaliated against in violation of 9 C.F.R. 2.32(c)(4) (2006), the Missouri Supreme Court did not consider whether that regulation provided whistleblowers a private cause of action for retaliatory discharge.

15

one-year employment contract after she complained of safety violations because "she was not fired, discharged, or terminated." In doing so, the court noted, "[w]e are unaware of any case, and [plaintiff] presents none, in which an employer was held liable in tort for refusing to renew an employment contract that had expired by its own terms." Daly, 55 Ca. App. 4th at 46, 63 Cal. Rptr. 2d at 730. Similarly, relying on Daly, a California court recently held that the mere non-renewal of a teacher's employment contract does not constitute an adverse employment action for purposes of stating a common law retaliatory discharge claim. See Motevalli v. Los Angeles Unified School District, 122 Cal. App. 4th 97, 106, 18 Cal. Rptr. 3d 562, 567 (2004). We agree with the rationale of these courts and find that it comports with the general trend of our supreme court to narrow the scope of the Illinois retaliatory discharge claim. As such, we refuse to extend the common law tort of retaliatory discharge beyond the confines defined in Krum.

Plaintiff, however, presents us with one recent district court decision, Helm v. Board of Trustees of Community College of District No. 504, No. 92 C 5118 (N.D. Ill. October 26, 1994), and one Vermont Supreme Court opinion, LoPresti v. Rutland Regional Health Services, Inc., 177 Vt. 316, 865 A.2d 1102 (2004), for the proposition that some courts have been willing to extend the tort of retaliatory discharge to failures by an employer to renew an employment contract.

With regard to Helm, we first note that as a federal district court opinion, that decision is not precedential or binding. See People v. Battiste, 133 Ill. App. 2d 62, 65, 272 N. E. 2d 808, 811-12 (1971) quoting United States ex. rel Lawrence v. Woods, 432 F. 2d 1072, 1075 (7th Cir. 1970) (noting that 'because lower federal courts exercise no appellate jurisdiction over state

16

tribunals, decisions of lower federal courts are not conclusive on state courts'). Furthermore, although the district court in Helm denied defendant's motion for summary judgment as to plaintiff's tort claim for retaliatory discharge, it provided no independent rationale for this decision. Helm, slip. op at 7. Instead, the court merely relied on the reasons which it had already discussed in context with a separate count of plaintiff's complaint predicated on section 1983 of the Civil Rights Act of 1991 (42 U.S.C. §1983 (West 2000)), which prohibited the employer, a state institution, from acting under color of law and depriving plaintiff of the rights guaranteed to her by the Constitution (42 U.S.C. §1983 (West 2000)), specifically by "discharging [her as] a public employee or *denying \*\*\* her a job benefit*"on the basis of her political affiliation in violation of the First Amendment (Emphasis added.) Helm, slip. op. at 4. The sole articulation for the basis of the court's ruling allowing plaintiff to proceed with her state retaliatory discharge claim was made in the following statement: "Based upon the reasoning given *supra*, for Count I [42 U.S.C. §1983 (2000), violation of first amendment rights], defendant's motion for summary judgment is denied as to Count IV [state retaliatory discharge]." Helm, slip. op. at 7. Unlike Helm, no first amendment freedom of speech violations were raised in this case.

We similarly find plaintiff's reliance on LoPresti to be misplaced. In that case, plaintiff, a physician, alleged that he was terminated for his refusal to refer his patients to certain specialists whom he believed provided substandard care to his patients and in some cases performed unnecessary invasive procedures. Lopresti, 177 Vt. at 323-24, 865 A.2d at 1109. Plaintiff was employed under a contract, which specifically stated that termination could occur "[o]ne [h]undred [e]ighty (180) days after written notice of termination with or without cause from

either party" to the other. Lopresti, 177 Vt. at 325, 865 A.2d at1110. The court in Lopresti characterized employment under this agreement as being terminable at will. LoPresti, 177 Vt. at 325, 865 A.2d at 1110. While we might not have treated an agreement with a six-month notice requirement in the same manner as LoPresti, in our case, the contract was phrased to explicitly provide for a fixed one-year term of employment, which expired automatically after one year.

However, plaintiff argues that even if we were to follow the reasoning in Krum, and accept the limited reach of the common law retaliatory discharge cause of action, this limitation would not apply to her case, because in her complaint she alleged she was discharged in retaliation for her whistle blowing activities under the Animal Welfare Act (Act), which contains express language barring any "discrimination" or "reprisal" against those reporting violations of the Act. We disagree.

Initially, we recognize that section 2.32(c)(4) promulgated as part of the Act does provide specific language barring retaliation against plaintiff:

> "(c) Training and instruction of personnel must include guidance in at least the following areas:
>
> * * *
>
> (4) Methods whereby deficiencies in animal care and treatment are reported, including deficiencies in animal care and treatment reported by any employee of the facility. *No facility employee, Committee member, or laboratory personnel shall be discriminated against or be subject to any reprisal for reporting violations of any regulation or standards under the Act.*" (Emphasis

added.) 9 C.F.R. § 2./--32(c) (1994).

Unlike the Athletic Trainers Practice Act, at issue in <u>Krum</u>, which "contain[ed] no language prohibiting retaliatory employment conduct," the language of section 2.32(c)(4) plainly prohibits "discrimination against" or "any reprisal" for reporting violations of the Act.

However, in a recent decision, in <u>Moor-Jankowski v. The Board of Trustees of New York</u>, No. 96 Civ. 5997 (S.D.N.Y. August 10, 1998) (unreported decision), the Southern District court of New York held that section 2.32(c)(4) does not provide a private cause of action for whistleblowers because whistleblowers are not part of the class for whose special benefit Congress enacted the Act, and because there is no evidence of either explicit or implicit congressional intent to protect such persons under the Act. Although we are aware that we are not bound by decisions of district courts (See <u>Battiste</u>, 133 Ill. App. 2d at 65, 272 N. E. 2d at 811-12), we find the reasoning of <u>Moor-Jankowski</u> to be persuasive and to be fully consistent with our analysis of similar statutory and regulatory provisions.

In finding section 2.32(c)(4) does not provide whistleblowers with a private cause of action, the court in <u>Moor-Jankowski</u> first noted that the Animal Welfare Act was enacted in 1966 'to insure that animals intended for use in research facilities ... are provided humane care and treatment.' <u>Moor-Jankowski</u>, slip. op. at 7 quoting 7 U.S.C.§2131(1) (2000). The court reasoned that the Act explicitly vests the Secretary of Agriculture with the power to conduct inspections and investigations to determine violations of the statute, and then levy fines, issue cease and desist orders, suspend and revoke licenses, and institute criminal prosecutions against violators. <u>Moor-Jankowski</u>, slip. op. at 9 quoting 7 U.S.C. §§2146, 2149 (2000) . Moreover, the

Act gives federal courts jurisdiction to enforce the Secretary's orders and to prevent and restrain violations of the Act and its regulations. Moor-Jankowski, slip. op. at 9 citing 7 U.S.C. §146 (2000).

The district court in Moor-Jankowski took note, that unlike these explicit provisions, which grant the Secretary enforcement power, the Act contains no provisions regarding whistleblowers. Specifically, the court remarked:

> "Nowhere does the [Act] provide for private citizens *** to file private causes of action for violations of the statue or [of] any of its implementing regulations promulgated by the Secretary. This silence is significant insofar as on numerous occasions Congress has explicitly provided for private causes of action by employees subjected to retaliation for reporting violations of federal law. *See eg.*, 5 U.S.C. § 2302 (b)(8); 15 U.S.C. § 2622 (Toxic Substance Control Act); 33 U.S.C. § 1367 (Water Pollution Control Act); 42 U.S.C. §6971 (Solid Waste Disposal Act); 46 U.S.C. §2114 (creating private cause of action for seamen who suffer retaliation for reporting to the Coast Guard violations of federal shipping and maritime laws). The fact that Congress chose not to do so here weighs against any finding of implicit or explicit congressional intent to [protect] whistleblowers." Moor-Jankowski, slip. op. at 8.

Accordingly, the court concluded that although regulation 2.32(c)(4) indirectly serves to protect "whistleblowers," it primarily aims to "further the [Act's] central purposes and the Secretary's ability to effectively administer the [Act] by encouraging the exposure of animal abuse in

20

No. 1-05-3175

research facilities," and thus declined to imply a private cause of action for whistleblowers. Moor-Jankowski, slip. op. at 7.

We agree with the rationale in Moor-Jankowski and find that it is consistent with the decisions of our supreme court which have thus far been hesitant "to imply [private retaliatory discharge] actions under a statute without explicit legislative authority." Fisher v. Lexington Health Care Inc., 188 Ill. 2d 455, 460-61, 468, 722 N. E. 2d 1115, 1118, 1121 (1999) (supreme court refused to imply a private right of action for nursing home employees from section 3-608 of the Nursing Home Care Act (210 ILCS 45/3-608 (West 1996)) which prohibited the "transfer, discharge, evict[ion], harasss[ment], dismissal or retaliation" against, among others, nursing home employees who reported abuse and neglect of nursing home residents, because nursing home employees were not members of the class that the Nursing Home Care Act was enacted to protect, and their injuries were not the type the statue was designed to prevent); Metzger v. DaRosa, 209 Ill. 2d 30, 35, 805 N. E. 2d 1165, 1168 (2004) (court declined to imply a private cause of action for whistleblowers from section 19c.1 of the Personnel Code (20 ILCS 415/19c.1 (West 2002)), which prohibited retaliation against state employees for reporting violations of "'any law, rule, or regulation'" or "'mismanagement, a gross waste of funds, and abuse of authority, or a substantial and specific danger to pubic health or safety'" because the statute was primarily intended to protect the public by providing efficient government administration, and because no civil remedy was provided by the statute for those employees injured by its violations).

21

### III. COROLLARY MATTERS

Plaintiff nevertheless requests that we remand to permit further amendment of her pleadings.  Although she does not articulate, other than by vague innuendo, what actions she may yet plead, other than those which we have precluded by our answer to the certified question presented here, we nevertheless remand to permit the trial court to consider whether in fact viable causes of action remain available to plaintiff under the applicable rules of the Code of Civil Procedure, including section 2-616 (735 ILCS 5/2-616 (West 2002)).

For the above-stated reasons, we answer the certified question in the negative and reverse the order of the trial court.

Reversed and remanded for further proceedings.

McNULTY and O'MALLEY, J. J., concur.