# ILLINOIS OFFICIAL REPORTS

## Appellate Court

---

### *1324 W. Pratt Condominium Ass'n v. Platt Construction Group, Inc.,*
### 2013 IL App (1st) 130744

---

| | |
|---|---|
| Appellate Court Caption | 1324 W. PRATT CONDOMINIUM ASSOCIATION, Plaintiff-Appellee, v. PLATT CONSTRUCTION GROUP, INC., Defendant-Appellee (EZ Masonry, Inc., Defendant-Appellant). |
| District & No. | First District, Fourth Division<br>Docket No. 1-13-0744 |
| Filed | September 19, 2013 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | In a "construction defect" action arising from the discovery of leaky doors, windows and ceilings in condominium units and common areas, the appellate court, in answer to two certified questions under Supreme Court Rule 308, stated that the relevant date for determining the insolvency of a general contractor for purposes of the exception in *Minton* allowing a subcontractor to be pursued when a general contractor is insolvent is the date a complaint or the latest amended complaint is filed against the general contractor, not the date construction was completed, and a condominium association may pursue a subcontractor when a general contractor is, as in the instant case, insolvent but in good standing with limited assets. |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 08-L-014415; the Hon. Ronald F. Bartkowitz, Judge, presiding. |
| Judgment | Remanded. |

| Counsel on Appeal | Joseph A. Bosco and Brian R. Kusper, both of LaRose & Bosco Ltd., of Chicago, for appellant. |

Robert W. Brunner, of Law Office of Robert W. Brunner, of Chicago, for appellees.

Panel                    JUSTICE FITZGERALD SMITH delivered the judgment of the court, with opinion.
Presiding Justice Howse and Justice Lavin concurred in the judgment and opinion.

**OPINION**

¶ 1 This is a construction defect lawsuit arising from the faulty construction of a residential condominium building built in 2005 at 1324 W. Pratt Boulevard, in Chicago, Illinois. The plaintiff-appellee, 1324 W. Pratt Condominium Association (hereinafter, the condominium association), seeks to recover damages from the general contractor, Platt-Construction Group, Inc. (hereinafter, Platt), and the masonry subcontractor, the defendant-appellant, EZ Masonry Inc. (hereinafter, EZ Masonry). This cause has already been before this appellate court twice. In this interlocutory appeal, we are asked to decide two questions of law certified by the circuit court pursuant to Illinois Supreme Court Rule 308 (Ill. S. Ct. R. 308 (eff. Feb. 26, 2010)): (1) "whether the relevant date for determining the insolvency of a general contractor [Platt] for purposes of the exception set forth in *Minton v. Richard Group of Chicago*[, 116 Ill. App. 3d 852 (1983),] is the date that a [c]omplaint (or latest amended complaint) is filed against the general contractor, or when the construction is completed; and (2) whether [the condominium association] may pursue [its] claims against EZ Masonry in this cause when Platt *** is insolvent, but is in good standing with limited assets." For the reasons that follow, we hold that the relevant date for determining the insolvency of a general contractor is not the date construction is completed but, rather, the date that an amended complaint is filed alleging the general contractor's insolvency, and that in this particular situation, the condominium association may proceed against EZ Masonry since Platt is insolvent.

¶ 2                                          I. BACKGROUND

¶ 3 Since this cause originated about a decade ago, and includes voluminous motion practice, for purposes of brevity we set forth only the relevant factual background and procedural history. Between 2004 and 2005, the developer, 6801 N. Wayne LLC (hereinafter, Wayne), engaged in the construction of an eight-unit residential building located at 1324 W. Pratt

-2-

Boulevard in Chicago, Illinois (hereinafter, the building). In order to construct the building, Wayne hired Platt as its general contractor, and Platt in turn hired several subcontractors, including, relevant for this appeal, EZ Masonry. After Platt completed the building in March 2005, Wayne sold the individual eight units as condominiums. On November 28, 2005, Wayne was involuntarily dissolved.

¶ 4 Soon thereafter, the unit owners discovered water leaks around windows, doors, ceilings and vents in their units and common areas of the building. The owners of the individual units formed the plaintiff condominium association to represent their collective interests. Starting in 2008, the condominium association filed a series of complaints against several defendants, attempting to recover damages caused by the construction defects. The first complaint was filed against Wayne, Platt and the roofing subcontractor (which is not a party to this appeal). The second amended complaint was filed on December 14, 2009, and named EZ Masonry as a defendant. Since then, relevant to this appeal, the litigation has proceeded against both Platt and EZ Masonry on, *inter alia*, a breach of implied warranty of habitability claim.

¶ 5 On June 9, 2009, Platt filed a motion to dismiss pursuant to section 2-619 of the Illinois Code of Civil Procedure (Code) (735 ILCS 5/2-619 (West 2008)), arguing that it could not be held liable under an implied warranty of habitability theory because that warranty applies to only "builder-vendors," *i.e.*, builders that not only construct a residential building but are also involved in the sale of the residence to the purchasers. The circuit court agreed with Platt and granted its motion to dismiss on September 11, 2009. The condominium association appealed, and on September 28, 2010, we reversed the order of the circuit court, ruling that "the warranty applies to builders of residential homes regardless of whether they are involved in the sale of the home." *1324 W. Pratt Condominium Ass'n v. Platt Construction Group, Inc.*, 404 Ill. App. 3d 611, 618 (2010) (*Pratt I*).[1]

¶ 6 After the cause was remanded to the circuit court, on December 20, 2010, the condominium association filed its third amended complaint alleging a breach of the implied warranty of habitability against, *inter alia*, Wayne, Platt and EZ Masonry. In January 2011, Platt and EZ Masonry both filed motions to dismiss pursuant to section 2-619 of the Code (735 ILCS 5/2-619 (West 2008)). EZ Masonry argued that while the general contractor (Platt) was solvent, it was improper to bring a claim for the breach of the implied warranty of habitability against a subcontractor, such as itself. In support of this contention, EZ Masonry cited *Minton v. Richards Group of Chicago*, 116 Ill. App. 3d 852 (1983). Platt argued that the individual condominium owners could not avail themselves of the implied warranty of habitability since they explicitly waived that warranty in their condominium purchase agreements. EZ Masonry orally joined in Platt's argument regarding waiver.

¶ 7 On May 19, 2011, the circuit court granted Platt's and EZ Masonry's motions to dismiss based upon the waiver of the implied warranty of habitability, but specifically denied EZ Masonry's claim that while Platt was solvent, the condominium association could not go forward with its claim against EZ Masonry. In doing so, the circuit court noted that *Pratt I*

---

[1]EZ Masonry filed a separate motion to dismiss (735 ILCS 5/2-619 (West 2008)) on June 17, 2010, but that motion was stayed until Pratt appealed the dismissal of its action against Platt.

modified *Minton* and extended the implied warranty of habitability to subcontractors without the need to first show that the purchaser had no recourse to the builder and/or vendor.

¶ 8 The case was appealed again to this court. On June 21, 2012, we reversed the circuit court's decision, *inter alia*, holding that so long as Platt remained solvent, the condominium association could not proceed against EZ Masonry. *1324 W. Pratt Condominium Ass'n v. Platt Construction Group, Inc.*, 2012 IL App (1st) 111474 (*Pratt II*). In doing so, we explicitly rejected the reasoning of the circuit court and reiterated that our decision in *Pratt I* nowhere extended or modified *Minton* to include all subcontractors, regardless of the solvency of the builder-vendor.

¶ 9 On remand to the circuit court, on January 8, 2013, the condominium association filed its fourth amended complaint against Platt and EZ Masonry, again alleging a breach of the implied warranty of habitability. The allegations in the fourth amended complaint were identical to the allegations in the third amended complaint except for additional language asserting that Platt is insolvent. After limited discovery, on February 27, 2013, the circuit court held that "Platt is insolvent, but remains a corporation in good standing with limited assets." The circuit court also held that the relevant date for determining the insolvency of a general contractor such as Platt is the date on which a complaint is filed against the general contractor; in this case, the fourth amended complaint, which was filed on January 8, 2013. The circuit court then certified two questions of law for interlocutory appeal pursuant to Illinois Supreme Court Rule 308, finding that as there were "substantial grounds for difference of opinion" as to these two questions and that answers to those two questions by this appellate court could "materially advance the ultimate termination of litigation." Ill. S. Ct. R. 308 (eff. Feb. 26, 2010). As already noted above, the certified questions are as follows: (1) "whether the relevant date for determining the insolvency of a general contractor for purposes of the exception set forth in *Minton v. Richard Group of Chicago*[, 116 Ill. App. 3d 852 (1983),] is the date that a [c]omplaint (or latest amended complaint) is filed against the general contractor, or when the construction is completed; and (2) whether [the condominium association] may pursue [its] claims against EZ Masonry in this cause when Platt *** is insolvent, but is in good standing with limited assets."

¶ 10                                    II. ANALYSIS

¶ 11 We begin by setting forth the scope of review that we must apply in all Rule 308 appeals. It is well settled that absent a statutory exception or rule of the supreme court, courts of appeal have jurisdiction to review only final judgments entered in the circuit court. *Walker v. Carnival Cruise Lines, Inc.*, 383 Ill. App. 3d 129, 133 (2008). Illinois Supreme Court Rule 308, however, provides one such exception and permits for permissive appeal of an interlocutory order certified by the trial court as involving a question of law as to which "there is substantial ground for difference of opinion" and "where an immediate appeal may materially advance the ultimate termination of the litigation." Ill. S. Ct. R. 308 (eff. Feb. 26, 2010); *In re Estate of Luccio*, 2012 IL App (1st) 121153, ¶ 17 (citing *Brookbank v. Olson*, 389 Ill. App. 3d 683, 685 (2009)). However, this rule is not intended to be a mechanism for expedited review of an order that merely applies the law to the facts of a particular case. *In*

*re Estate of Luccio*, 2012 IL App (1st) 121153, ¶ 17; see also *Walker*, 383 Ill. App. 3d at 133; *Morrissey v. City of Chicago*, 334 Ill. App. 3d 251, 258 (2002). Nor does it permit us to review the propriety of the order entered by the lower court. *In re Estate of Luccio*, 2012 IL App (1st) 121153, ¶ 17; see also *Walker*, 383 Ill. App. 3d at 133. Rather, we are limited to answering the specific question certified by the trial court. *Moore v. Chicago Park District*, 2012 IL 112788, ¶ 9; see also *Bajalo v. Northwestern University*, 369 Ill. App. 3d 576, 580 (2006) ("In [a Rule 308] interlocutory appeal, the court's examination is limited to the questions certified by the trial court, and a reviewing court will ordinarily not expand the certified question under review to answer other questions that could have been included but were not."). As with all questions of law, we review certified questions presented for interlocutory appeal under a *de novo* standard. *Moore*, 2012 IL 112788, ¶ 9; see also *Bajalo*, 369 Ill. App. 3d at 580.

¶ 12                                                    A. Timing

¶ 13       Turning to the merits, we first address what time should determine the viability/insolvency of the general contractor, so as to permit the aggrieved purchaser to proceed against the subcontractors. EZ Masonry argues that the proper time to determine the solvency of the general contractor (Platt) should be the date of the filing of the initial complaint, in this case December 31, 2008, and not, as the circuit court found, the date of the last amended complaint, January 8, 2013. EZ Masonry contends that there must be some time limit to the exposure of subcontractors in claims for the breach of the implied warranty of habitability based upon the insolvency of a general contractor. It further argues that in this case it is unfair to use the date of the fourth amended complaint to determine Platt's insolvency, since that amended complaint was filed some 8 years after the construction of the building and 4½ years after the commencement of the litigation. We strongly disagree.

¶ 14       EZ Masonry's argument ignores the public policy behind the judicial creation of the implied warranty of habitability. As we have articulated twice before in both *Pratt I* and *Pratt II*, the implied warranty of habitability is a "creature of public policy" that was explicitly designed by our courts "to protect purchasers of new houses upon discovery of latent defects in their homes." *Redarowicz v. Ohlendorf*, 92 Ill. 2d 171, 183 (1982). The rationale for the application of the policy has been threefold. See *Board of Directors of Bloomfield Club Recreation Ass'n v. The Hoffman Group, Inc.*, 186 Ill. 2d 419, 425-26 (1999); *VonHoldt v. Barba & Barba Construction, Inc.*, 175 Ill. 2d 426, 430-31 (1997); *Redarowicz*, 92 Ill. 2d at 183; *Petersen v. Hubschman Construction Co.*, 76 Ill. 2d 31, 39-40 (1979). First, purchasers of new homes "generally do not [have] the ability to determine whether the houses they have purchased contain latent defects." *Bloomfield Club*, 186 Ill. 2d at 425. Second, "[t]he purchaser needs this protection because, in most cases, [he or she] is making the largest single investment of his or her life and is usually relying upon the honesty and competence of the builder, who, unlike the typical purchaser, is in the business of building homes." *Bloomfield Club*, 186 Ill. 2d at 425. And finally, "[i]f construction of a new house is defective, its repair costs should be borne by the responsible builder-vendor who created the latent defect," rather than the innocent and unknowing purchaser. *Redarowicz*, 92 Ill. 2d at 183.

¶ 15    On the basis of this rationale, our courts have steadily expanded the application of the warranty to serve the underlying public policy of protecting new homeowners and holding those responsible for the construction of the buildings accountable for latent defects in residences that they construct. See, *e.g.*, *Redarowicz*, 92 Ill. 2d at 183 (expanding the class of plaintiffs with standing to sue for a violation of the implied warranty of habitability to successive purchasers); *VonHoldt*, 175 Ill. 2d at 430 (expanding the type of structures covered by the warranty to include new additions to existing buildings); *McClure v. Sennstrom*, 267 Ill. App. 3d 277 (1994) (expanding the warranty of habitability to include a house built on a preexisting foundation); *Briarcliffe West Townhouse Owners Ass'n v. Wiseman Construction Co.*, 118 Ill. App. 3d 163 (1983) (expanding the warranty to a vacant common lot of a townhouse development); *Herlihy v. Dunbar Builders Corp.*, 92 Ill. App. 3d 310 (1980) (expanding the warranty to apply to common elements of condominiums); *Park v. Sohn*, 89 Ill. 2d 453 (1982) (expanding the class of potential defendants to include a builder-vendor that is not in the business of building); *Hefler v. Wright*, 121 Ill. App. 3d 739 (1984) (expanding the class of potential defendants to include a builder that erected a house manufactured by another party); *Minton*, 116 Ill. App. 3d at 855 (extending the warranty to subcontractors where a builder-vendor is insolvent and the purchaser has no available recourse against it); *Tassan v. United Development Co.*, 88 Ill. App. 3d 581 (1980) (extending the warranty to developers).

¶ 16    Adhering to these same public policy principles, in *Minton*, we specifically expanded the application of the implied warranty of habitability to subcontractors to "protect innocent purchasers" who had "no recourse to the builder-vendor and [had] sustained loss due to the faulty and latent defect in their new home caused by the subcontractor." *Minton*, 116 Ill. App. 3d at 855.

¶ 17    EZ Masonry's position that insolvency of the general contractor should be determined on the date of filing of the initial complaint goes against the very public policy intended to protect "innocent purchasers" from latent defects that they are likely to find many years later. What is more, it ignores the reality that a general contractor may become insolvent after the filing of the initial lawsuit, and even perhaps as a result of that lawsuit. In fact, in *Minton*, wherein we expanded the warranty to apply to subcontractors responsible for the latent defects if no recourse could be had against the builder-vendor, the plaintiffs did not pursue their claim against the subcontractor in their original complaint. *Minton*, 116 Ill. App. 3d at 853. Rather, they did so in their second pleading (their first amended complaint) and only after the general contractor was dissolved as a corporation and found to be insolvent. See *Minton*, 116 Ill. App. 3d at 853. Accordingly, we fail to see how EZ Masonry can argue that the proper date for determining insolvency of the general contractor is the date of the initial complaint. See *Minton*, 116 Ill. App. 3d at 853; see also *Dearlove Cove Condominiums v. Kin Construction Co.*, 180 Ill. App. 3d 437, 440 (1989) (permitting the plaintiffs to amend their complaint alleging the breach of the implied warranty of habitability to include the subcontractors, over two years after the filing of the initial complaint against the general contractor, where the general contractor became insolvent; complaint was permitted to proceed against the subcontractors even though it was not filed within the applicable two year statute of limitations for such claims, since the original complaint against the general

contractor was timely filed); see also 15 Solomon Gutstein, Eileen Murphy & Joshua Gutstein, Illinois Practice § 13:64 (2d ed. 2012) ("If the builder-vendor is insolvent, a new cause of action [against the subcontractor] arises *on the date of insolvency*." (Emphasis added.)).

¶ 18                                   B. The Level of Insolvency Required

¶ 19       We next turn to the second certified question, *i.e.*, whether the condominium association may pursue its claim against EZ Masonry, when Platt is "insolvent, but in good standing with limited assets." EZ Masonry contends that it would be unfair to permit the condominium association to pursue its claim against EZ Masonry where Platt is a viable corporation that has succeeded in defending itself in this litigation for years. Citing to three decisions by this appellate court, *Minton*, 116 Ill. App. 3d at 855, *Washington Courte Condominium Ass'n-Four v. Washington-Golf Corp.*, 150 Ill. App. 3d 681 (1986), and *Pratt II*, 2012 IL App (1st) 111474, ¶¶ 35-40, EZ Masonry contends that there remains uncertainty as to whether the determining factor in whether a purchaser can proceed against a subcontractor is "solvency," "no recourse" or "the viability" of a corporation. After a review of those cases, we strongly disagree.

¶ 20       The law in Illinois is clear. An innocent purchaser may proceed on a claim for the breach of the implied warranty of habitability against a subcontractor where the builder-vendor is insolvent. See *Minton*, 116 Ill. App. 3d at 855; see also *Washington Courte*, 150 Ill. App. 3d at 689; *Pratt II*, 2012 IL App (1st) 111474, ¶¶ 35-40; see also *Dearlove Cove Condominiums*, 180 Ill. App. 3d at 440; see also Gutstein *et al.*, *supra* § 13:63 ("The warranty has been held to bind a subcontractor who did defective work in a case where the builder-vendor dissolved without assets, although there was no privity between the owner and the subcontractor. However, the subcontractor is not bound by the warranty if the contractor is not *insolvent*." (Emphasis added.)).

¶ 21       In *Minton*, the seminal case expanding the application of the implied warranty of habitability to subcontractors, the builder-vendor from whom the plaintiffs had purchased their home dissolved as an entity. *Minton*, 116 Ill. App. 3d at 853. Prior to the dissolution, the plaintiffs had demanded that the builder-vendor correct the peeling paint on the outside of their home and filed a complaint against it. *Minton*, 116 Ill. App. 3d at 853. The builder-vendor made no repairs, and when it dissolved, the plaintiffs pursued their breach of the implied warranty of habitability claim against the responsible subcontractor. *Minton*, 116 Ill. App. 3d at 853. The circuit court dismissed the plaintiffs' claim against the subcontractor and the plaintiffs appealed, arguing that the implied warranty of habitability should be applied to a subcontractor of a builder-vendor where the builder-vendor was dissolved and is insolvent. *Minton*, 116 Ill. App. 3d at 854. The court in *Minton* agreed with the plaintiffs and held:

> "[W]here the innocent purchaser has no recourse to the builder-vendor and has sustained loss due to the faulty and latent defect in their new home caused by the subcontractor, the warranty of habitability applies to such subcontractor." *Minton*, 116 Ill. App. 3d at 855.

In coming to this decision, the court reasoned:

"Purchasers from a builder-vendor depend upon his ability to construct and sell a home of sound structure and his ability to hire subcontractors capable of building a home of sound structure. *** The plaintiffs here had no control over the choice of [the builder-vendor] to paint the eaves and windows of their home, and [the builder-vendor] was in the better position to know which subcontractor could perform the work adequately." *Minton*, 116 Ill. App. 3d at 854.

¶ 22       Several years after *Minton*, in *Washington Courte*, 150 Ill. App. 3d at 689, our appellate court revisited the issue of whether the implied warranty of habitability can be extended to subcontractors. In that case, the plaintiffs did not present evidence that the general contractor was insolvent until six months after the subcontractor's reply brief had been filed. Under that record, the appellate court held that "the allegation of insolvency [was] legally unsubstantiated and [was] a matter *de hors* the record." *Washington Courte*, 150 Ill. App. 3d at 689. Accordingly, the court concluded that the *Minton* exception did not apply. *Washington Courte*, 150 Ill. App. 3d at 689. Contrary to EZ Masonry's suggestion, nothing in *Washington Courte* negates the position that "insolvency" of the general contractor is the determining factor in establishing whether a purchaser can proceed against a subcontractor on a breach of implied warranty of habitability claim. See *Washington Courte*, 150 Ill. App. 3d at 689 ("we reject plaintiffs' allegation that Washington-Golf Corporation *is insolvent* on the grounds that the allegation of insolvency is legally unsubstantiated and is a matter *de hors* the record. Therefore, the issue is not properly before this court. [Citation.] As a result, we find the *Minton* exception inapplicable." (Emphasis added.)).

¶ 23       Three years after *Washington Courte*, in *Dearlove Cove Condominiums*, 180 Ill. App. 3d at 440, we held that where a plaintiff timely filed his action against a general contractor for construction defects, and the general contractor subsequently became insolvent, under *Minton*, the plaintiff could proceed against the subcontractor even if he failed to file the complaint within the applicable statute of limitations so long as the action was timely filed against the general contractor. In that case, we reiterated that *Minton* stood for the proposition that a purchaser can proceed against a subcontractor if a builder-vendor is "insolvent." See *Dearlove Cove Condominiums*, 180 Ill. App. 3d at 439-40 ("As long as the plaintiffs' original action against the general contractor is timely, we believe that the plaintiffs should able to bring their action against the subcontractor within two years from the time at which the plaintiff knew or reasonably should have known of the existence of the right to sue. [Citation.] Thus, the plaintiffs had two years from the time they knew or should have known *of the general contractor's insolvency.*" (Emphasis added.)).

¶ 24       Following the rationale in *Minton*, *Washington Courte* and Dearlove Cove Condominiums, in *Pratt II*, and under the record we had before us then, which included no allegations regarding Platt's insolvency, we held that the condominium association could not proceed against EZ Masonry "while it still had recourse against Platt." *Pratt II*, 2012 IL App (1st) 111474, ¶ 39. In doing so, we specifically held that unlike the developer, Wayne, Platt was solvent. See *Pratt II*, 2012 IL App (1st) 111474, ¶ 39.

¶ 25       Under the aforementioned precedent, which we find to be consistent, we hold and clarify that for purposes of determining whether a purchaser may proceed against a subcontractor on a breach of implied warranty of habitability claim, the court must look to whether the

general contractor is solvent. Insolvency simply means that a party's liabilities exceed the value of its assets, and that it has stopped paying debts in the ordinary course of business. See Black's Law Dictionary 799 (7th ed. 2007); see also 740 ILCS 160/3 (West 2010) ("(a) A debtor is insolvent if the sum of the debtor's debts is greater than all of the debtor's assets at a fair valuation. (b) A debtor who is generally not paying his debts as they become due is presumed to be insolvent."). It is the burden of the purchaser to establish that the general contractor is insolvent before it can proceed against the subcontractor on such a claim. Once the purchaser becomes aware that the general contractor is insolvent, it must file an amended complaint, alleging the insolvency and seeking to proceed against the subcontractor.

¶ 26    In the present case, the circuit court held that Platt "is insolvent, but is in good standing with limited assets." Under that record, and factual finding, which we have no basis to disturb,[2] we are compelled to conclude that the condominium association may proceed with its breach of the implied warranty of habitability claim against EZ Masonry.

¶ 27                              III. CONCLUSION
¶ 28    For the foregoing reasons, we remand to the circuit court for further proceedings.

¶ 29    Remanded.

---

[2]The condominium association asserts in its brief that during the limited discovery held on the issue of Platt's solvency, Platt admitted that its liabilities are currently greater than the value of its assets, and that it has no assets other than a sign which is believed to have no market value, and one outstanding receivable for $3,500. Platt further listed its liabilities as: (1) money owed to subcontractors; (2) $90,000 owed on a line of credit; and (3) ongoing attorney fees related to this litigation. EZ Masonry asks that we strike this portion of the condominium association's brief as it cites to an appendix, which was not properly submitted before this court as part of a supplementary supporting record, as is required under Illinois Supreme Court Rule 308 (Ill. S. Ct. R. 308 (eff. Feb. 26, 2010)). We need not strike that portion of the brief, however, since we do not rely on these facts in coming to our conclusion, but rather merely rest our conclusion on the circuit court's factual finding that Platt is "insolvent."