# Illinois Official Reports

## Appellate Court

---

**Board of Managers of the 1120 Club Condominium Ass'n v. 1120 Club, LLC,**
**2016 IL App (1st) 143849**

---

Appellate Court
Caption

BOARD OF MANAGERS OF THE 1120 CLUB CONDOMINIUM
ASSOCIATION, Plaintiff-Appellant, v. 1120 CLUB, LLC, an Illinois
Limited Liability Company, and TRAPANI CONSTRUCTION
COMPANY, INC., an Illinois Company, Defendants-Appellees,
(1120 Club, LLC, Third-Party Plaintiff-Appellant, v. Trapani
Construction Company, Inc., Legat Architects, Inc., and The Rise
Group, LLC, Third-Party Defendants-Appellees; Trapani
Construction Company, Inc., Fourth-Party Plaintiff-Appellant, v.
MacDonald Construction Services, Inc., Kole Construction Company,
Inc., Boyle Construction Company, Inc., Howard Concrete, Streich
Corporation, and Stock Building Supply, Inc., Fourth-Party
Defendants-Appellees).

District & No.

First District, Third Division
Docket Nos. 1-14-3849, 1-14-3953, 1-15-0033 cons.

Filed

October 26, 2016

Decision Under
Review

Appeal from the Circuit Court of Cook County, No. 12-L-7092; the
Hon. Margaret Brennan, Judge, presiding.

Judgment

Reversed and remanded.

Counsel on Appeal

Figliulo & Silverman, P.C., of Chicago (Michael K. Desmond, Gregory L. Stelzer, and Melissa N. Eubanks, of counsel), for appellant.

LaBarge, Campbell & Lyon, LLC, of Chicago (Bruce W. Lyon and Kathleen J. Scanlan, of counsel), for appellee Trapani Construction Company, Inc.

Cassiday Schade LLP, of Chicago (Joseph A. Giannelli and Michael D. Pisano, of counsel), for appellee Stock Building Supply, Inc.

Condon & Cook, LLC, of Chicago (J. Scott Gillman, of counsel), for appellee MacDonald Construction Services, Inc.

Law Office of David A. Izzo, of Chicago (Tod H. Rottman, of counsel), for appellee Kole Construction Company, Inc.

Esp Kreuzer Cores LLP, of Wheaton (Adam S. Kreuzer and Jeffrey Barger, of counsel), for appellee Boyle Construction Company, Inc.

HeplerBroom LLC, of Crystal Lake (Holly C. Whitlock, of counsel), for appellee Howard Concrete.

Tribler Orpett & Meyer, PC, of Chicago (Michael J. Meyer and David E. Schroeder, of counsel), for appellee Streich Corporation.

Panel

JUSTICE PUCINSKI delivered the judgment of the court, with opinion.
Justices Lavin and Cobbs concurred in the judgment and opinion.

## OPINION

¶ 1     This matter arises from claims by the plaintiff, Board of Managers of the 1120 Club Condominium Association (Board), that a condominium building developed and sold by defendant 1120 Club, LLC (LLC) and built by defendant Trapani Construction Company, Inc. (Trapani) suffered from a number of construction defects. In addition to being a direct defendant on the claims brought by the Board, Trapani was also a third-party defendant to claims brought by the LLC. In turn, in response to the claims brought by both the Board and the LLC, Trapani filed third-party and fourth-party claims against various subcontractors. This single civil case led to three separate appeals, which were consolidated.

¶ 2    After a somewhat convoluted procedural history, the trial court granted Trapani's motions to dismiss the claims brought against it by the Board and the LLC on the bases that the Board had elected to pursue recourse from the LLC and thus could not seek recourse from Trapani and that the LLC lacked standing to bring its claims. The grant of these motions resulted in the dismissal of Trapani's claims against the subcontractors. After the trial court entered Illinois Supreme Court Rule 304(a) (eff. Feb. 26, 2010) findings on the respective dismissal orders, the Board, the LLC, and Trapani brought these consolidated appeals. For the reasons that follow, we reverse and remand for further proceedings.

¶ 3                                    BACKGROUND

¶ 4    In May 2009, the Board instituted this action by filing suit against the LLC and 1120 Retail, LLC (Retail). The Board then amended its complaint. The Board's amended complaint alleged that the Board is the governing body of the 1120 Club Condominium development located at 1124 Lake Street, Oak Park, Illinois. The Board alleged that residential units and common elements of the building were damaged as a result of construction defects, including the installation of fiber cement siding rather than brick and architectural stone. The Board further alleged that the fiber cement siding was improperly installed and that it warped and/or failed, allowing water to penetrate the building, causing extensive damage to the common elements and residential units of the building. In addition, the Board alleged that the flashings around windows and doors were improperly designed and/or installed, resulting in water penetration into the building; mold and mildew infiltration into the residential units and common elements of the building; water damage to residential units from the water penetration on the fourth and seventh floors; and a lack of proper flashing at certain fourth-floor units and on the west wall of the swimming pool.

¶ 5    Against the LLC, the developer and seller of the development, the amended complaint alleged claims of breach of contract, breach of express warranty, consumer fraud, and negligent misrepresentation. Against both the LLC and Retail, the Board alleged breach of contract and sought an injunction related to the reimbursement of expenses the Board claimed it was due from the defendants.

¶ 6    On March 29, 2011, the LLC filed its third-party complaint against Trapani, alleging that Trapani and its subcontractors were responsible for the construction defects alleged by the Board. The LLC's third-party complaint sounded in breach of contract, express indemnification, and implied indemnification.

¶ 7    On May 11, 2011, the LLC filed a petition for Chapter 7 bankruptcy. Thereafter, the instant matter was placed on the stay calendar due to the bankruptcy.

¶ 8    In June 2012, the Board filed a motion seeking to have the case removed from the stay calendar on the grounds that the bankruptcy court had modified the stay to allow the Board to pursue its claims against the LLC to the extent of the LLC's available insurance. The trial court granted the Board's motion and removed the matter from the bankruptcy calendar.

¶ 9    On August 24, 2012, the Board filed its second amended complaint. In the second amended complaint, the Board dropped its claims against Retail, thereby removing Retail from this action, and instead chose to bring claims against only the LLC and Trapani. More specifically, it sounded in claims of breach of contract, breach of express warranty, consumer fraud, and negligent misrepresentation against the LLC. Counts VI and VII of the second amended

complaint alleged claims of breach of implied warranty of habitability and breach of implied warranty of good workmanship against Trapani.

¶ 10 Trapani moved to dismiss counts VI and VII of the Board's second amended complaint on the grounds that, under the holding of *Minton v. Richards Group of Chicago*, 116 Ill. App. 3d 852 (1983), the Board could not directly sue Trapani without first establishing that the LLC was insolvent and the Board had no recourse against the LLC. According to Trapani, the Board could not clear this procedural hurdle because it was pursuing the LLC's insurance, indicating that the LLC was not insolvent and that the Board had recourse against the LLC. The Board refuted these contentions by arguing that the LLC was, in fact, insolvent because the insurance proceeds were not property of the bankruptcy estate and because the holding of *1324 W. Pratt Condominium Ass'n v. Platt Construction Group, Inc.*, 404 Ill. App. 3d 611 (2010) (*Pratt I*), permitted a direct action against builders. On April 9, 2013, the trial court denied Trapani's motion to dismiss.

¶ 11 In the meantime, Trapani filed its third-party complaint against subcontractors MacDonald Construction Services, Inc., Kole Construction Company, Inc., Boyle Construction Company, Inc., Howard Concrete, Streich Corporation, and Stock Building Supply, Inc. (hereafter collectively referred to as the subcontractors), which it later amended. Trapani's first amended third-party complaint sought contribution from each of the subcontractors for their portion of liability for the damages alleged by the Board. Trapani also brought counts for breach of contract, breach of express warranty, breach of implied warranty of workmanship, and breach of contract to procure insurance against each of the subcontractors.

¶ 12 Certain subcontractors brought motions to dismiss Trapani's first amended third-party complaint. Some of them argued that it should be dismissed because the Board did not have a cause of action against Trapani under *Minton*. On December 4, 2013, the trial court agreed and granted the subcontractors' motions to dismiss with prejudice based on the *Minton* arguments. The trial court also *sua sponte* reversed its previous denial of Trapani's motion to dismiss counts VI and VII of the Board's second amended complaint and entered an order dismissing the Board's claims against Trapani with prejudice. The trial court then dismissed all of the other subcontractors with prejudice.

¶ 13 On January 3, 2014, the Board filed a motion to reconsider the trial court's dismissal of counts VI and VII against Trapani. In that motion, the Board argued that it had a claim against Trapani independent of *Minton* and that, even if it did not, the LLC was insolvent, such that the Board could pursue Trapani under *Minton*. Trapani and subcontractor Stock responded to the Board's motion to reconsider, arguing that the trial court's dismissal was proper because *Minton* did, in fact, govern the Board's claims against Trapani and the LLC was solvent.

¶ 14 While the parties were briefing the Board's motion to reconsider, the LLC filed a motion requesting that its third-party complaint against Trapani be removed from the bankruptcy calendar and reinstated. The trial court granted the LLC's motion. The LLC then requested leave to file an amended third-party complaint. The trial court granted the LLC's motion and also reinstated Trapani's third-party complaint and converted it to a fourth-party complaint. The amended third-party complaint filed by the LLC contained three counts against Trapani (breach of contract, express indemnification, and implied indemnification) and a count of breach of contract against The Rise Group, LLC (Rise Group), and Legat Architects, Inc. (Legat).

¶ 15 Legat filed a motion to dismiss the breach of contract claim against it in the LLC's amended third-party complaint arguing that the LLC failed to comply with all of the conditions of their contract by failing to attend mediation. Legat also argued that pursuant to the contract between Legat and the LLC, the LLC's exclusive remedy was arbitration. It does not appear from the record that Rise Group filed any responsive pleading to the LLC's amended third-party complaint.

¶ 16 On June 17, 2014, the trial court issued its corrected order denying the Board's motion to reconsider. In that order, the trial court explained that by electing to pursue the LLC's insurance proceeds, the Board foreclosed its opportunity to "bridge the lack of privity (under *Minton*)" between the Board and Trapani and to seek recovery from any "down the line" contractors. According to the trial court, the matter was one involving an election of remedies, as the Board could choose to either recover the LLC's insurance proceeds or use the *Minton* exception to extract recovery from Trapani.

¶ 17 Trapani moved to dismiss the LLC's amended third-party complaint on the ground, among others, that the LLC lacked standing to bring the suit against Trapani, because upon filing the bankruptcy petition, ownership of the claim transferred to the bankruptcy estate and could only be pursued by the bankruptcy trustee. Likewise, a number of the subcontractors moved to dismiss Trapani's fourth-party complaint on the same basis, *i.e.*, that the LLC lacked standing to pursue its claim against Trapani. The LLC responded to these motions by arguing that it did have standing because (1) its claim against Trapani did not belong to the bankruptcy estate because it related to insurance proceeds, which were not property of the bankruptcy estate, and (2) on September 4, 2014, after Trapani and the subcontractors filed their motions to dismiss, the bankruptcy trustee assigned any claims against Trapani in the present matter to the LLC.

¶ 18 On November 13, 2014, the trial court granted Trapani's motion and dismissed the LLC's amended third-party complaint with prejudice. As a result of the dismissal of the LLC's third-party claims, the trial court also dismissed with prejudice Trapani's fourth-party complaint against the subcontractors. The trial court found Legat's motion to dismiss to be moot given the dismissal of the LLC's amended third-party complaint with prejudice. Although the order does not mention Rise Group specifically, the order's reference to the dismissal of "the entirety of [the LLC's] amended third-party complaint against all third-party defendants with prejudice" indicates that the breach of contract claim against Rise Group was also dismissed with prejudice.

¶ 19 The LLC requested leave to file a second amended third-party complaint based on the contention that it had standing by way of the bankruptcy trustee's assignment. On December 3, 2014, the trial court denied the LLC's request and instead entered Rule 304(a) findings as to its orders dated December 4, 2013; June 17, 2014; November 13, 2014; and December 3, 2014.

¶ 20 The Board, the LLC, and Trapani each filed timely notices of appeal.

¶ 21                                    ANALYSIS
¶ 22                    I. Appeal No. 1-14-3849 (*Board v. LLC*, *et al.*)
¶ 23 In its appeal, the Board contends that the trial court erred in dismissing counts VI and VII of its second amended complaint by applying the doctrine of election of remedies. According to the Board, the method and manner by which the trial court applied the election of remedies doctrine constituted reversible error, and even if it did not, the trial court's dismissal of counts

VI and VII is reversible because the Board has a cause of action against Trapani independent of *Minton*. Because we agree with the Board's latter contention, we reverse.

¶ 24　　An order of dismissal pursuant to section 2-619 of the Code of Civil Procedure (735 ILCS 5/2-619 (West 2014)) is reviewed *de novo*. *Porter v. Decatur Memorial Hospital*, 227 Ill. 2d 343, 352 (2008). The section 2-619 motion admits as true all well-pleaded facts and all reasonable inferences to be drawn from the facts. *Id.* In addition, all pleadings and supporting documents must be construed in the light most favorable to the non-moving party. *Id.*

¶ 25　　The trial court's order granting Trapani's motion to dismiss does not explain the trial court's basis for its sudden reversal of its position. In denying the Board's motion to reconsider, however, the trial court concluded that the Board, in electing to pursue the LLC's insurance, foreclosed its opportunity to pursue recovery from "down the line" contractors under *Minton*. Whether this constituted an erroneous application of the election of remedies doctrine, as the Board argues, need not be determined here, as the Board's cause of action against Trapani for breach of the implied warranty of habitability lies not under *Minton*, but under *Pratt I*.

¶ 26　　The purpose of the implied warranty of habitability is to protect homeowners from latent defects in their homes that affect the habitability of those residences. *Board of Directors of Bloomfield Club Recreation Ass'n v. The Hoffman Group, Inc.*, 186 Ill. 2d 419, 424 (1999). Three major policy considerations underlie the warranty of habitability: (1) purchasers today typically do not have the ability to assess whether the home they purchased contains latent defects; (2) in making what is most likely the single biggest investment of their lives, purchasers rely upon the honesty and competence of the builder; and (3) if defects exist in the home, the cost of repairing those defects should be borne by the builder who caused the defect. *Pratt I*, 404 Ill. App. 3d at 616-17 (citing *Bloomfield Club*, 186 Ill. 2d at 425, and *Redarowicz v. Ohlendorf*, 92 Ill. 2d 171, 183 (1982)).

¶ 27　　To achieve this purpose and serve those policies, the class of potential defendants to a claim for breach of the warranty of habitability has been expanded beyond the builder-vendor or developer-vendor to include builders who are not involved in the sale of the residence. *Pratt I*, 404 Ill. App. 3d at 617. In *Pratt I*, the plaintiff condo association filed suit against the defendant builder, the developer-vendor, and the roofing subcontractor after the unit owners discovered leaks around their windows. *Id.* at 613-14. Among the claims brought against the builder was a claim for breach of the implied warranty of habitability, which the trial court dismissed on the basis that it applied only to builder-vendors, *i.e.*, builders that were also involved in the sale of the residences. *Id.* at 614. On appeal, this court reversed, holding that the implied warranty of habitability is applicable to builders, regardless of whether the builders were involved in the sale of the residence. *Id.* at 617. We concluded that holding builders accountable for the latent defects in homes they build and placing the costs of repairing those defects on the builder who created the defects was consistent with the purposes of the implied warranty of habitability. *Id.*

¶ 28　　Here, the Board alleged that Trapani, as the general contractor, built the building and residences at issue, and we take all well-pled allegations in the Board's second amended complaint as true. See *Porter*, 227 Ill. 2d at 352. Thus, *Pratt I* governs the question of whether the implied warranty of habitability applies to Trapani. As discussed above, it does.

¶ 29　　The trial court appears to have assumed, and Trapani and the subcontractors argue on appeal, that the Board's claims against Trapani are governed by *Minton*. In *Minton*, the

warranty of habitability was extended to subcontractors in those situations "where the innocent purchaser has no recourse to the builder-vendor and has sustained loss due to the faulty and latent defect in their new home caused by the subcontractor." *Minton*, 116 Ill. App. 3d at 855. We later clarified that to pursue a claim against a subcontractor, the plaintiff must demonstrate that the builder-vendor is insolvent (as opposed to showing a lack of recourse against the builder-vendor). *1324 W. Pratt Condominium Ass'n v. Platt Construction Group, Inc.*, 2013 IL App (1st) 130744, ¶ 25 (*Pratt III*).

¶ 30 Trapani and the subcontractors attempt to expand *Minton*'s application beyond subcontractors to all non-vendor contractors by arguing that the Board cannot pursue its claim for breach of the warranty of habitability against Trapani because it cannot first show that the developer-vendor, the LLC, is insolvent. Yet, the *Minton* court addressed only subcontractors, not builders/general contractors, and we see no reason to expand *Minton*'s holding in light of the existence of *Pratt I*. When this court determined in *Pratt I* that the implied warranty of habitability applied to builders in general, it did not discuss the holding in *Minton*, much less hold that claims for breach of the implied warranty of habitability against builders are only actionable if the developer-vendor (or anyone else "in line" before the builder, for that matter) is insolvent. Other than *Minton*, the parties have not cited, and we have not found, any case law that requires a plaintiff to apply the implied warranty of habitability against potential defendants in a specific sequence.

¶ 31 Nevertheless, Trapani and the subcontractors contend that *Pratt I* maintains the insolvency requirement of *Minton* because the developer-vendor (the subcontractors erroneously refer to it as the builder-vendor) in that case was involuntarily dissolved prior to suit and, thus, there was no recourse against the developer-vendor, allowing the plaintiff to proceed against the next in line, the builder. This distinction, however, does not change our analysis. First, as we clarified in *Pratt III*, the relevant inquiry under *Minton* is insolvency, not availability of recourse. *Pratt III*, 2013 IL App (1st) 130744, ¶ 25. Second, involuntary dissolution is not necessarily the same thing as insolvency. Involuntary dissolution may occur under a number of circumstances, some of which may or may not include the company's insolvency. See 805 ILCS 180/35-1(4) (West 2014). Finally, this Court, in issuing its decision in *Pratt I*, did not consider the developer's involuntary dissolution or solvency status in reaching the conclusion that the implied warranty of habitability applied to the builder. Accordingly, the fact that the developer in *Pratt I* was involuntarily dissolved at the time of suit is a distinction without a difference.

¶ 32 As discussed above, the purpose of the warranty of habitability is served by allowing plaintiffs to proceed against builders. The conclusion that the developer need not be insolvent before a claim for breach of the implied warranty of habitability is brought against the builder further serves that purpose, as it is the builder, even more than the developer, that is in a position to prevent latent defects and that is most accountable for any defects that might occur. To require a plaintiff to first pursue the developer before it can pursue the entity most responsible for any defects, simply because the developer was the seller (or extended the warranty, as Trapani and the subcontractors refer to it) is untenable.

¶ 33 The subcontractors also argue that if we were to accept the Board's interpretation of *Pratt I*, plaintiffs would be able to choose between bringing suit against the builder-vendor or the general contractor. As a result, the subcontractors contend, the builder-vendor would be able to escape liability, despite the fact that it was the entity that extended the warranty to the

buyers. Initially, despite the subcontractors' contentions to the contrary, the LLC is alleged to have been the developer-vendor of the properties at issue, as opposed to the builder-vendor. Trapani, although admittedly not a vendor, is alleged to have been hired not only as a general contractor, but also to construct the properties at issue, thus making it both a general contractor and a builder. Accordingly, the contention that the Board is choosing between a builder-vendor and a general contractor in this case is misleading.

¶ 34    The real concern of the subcontractors seems to be in allowing the builder (and, in this case, general contractor) to be pursued without vendor status, because the builder did not extend the warranty to the purchaser. This concern, however, was already addressed in *Pratt I* when this Court reiterated the Supreme Court's statements that although the warranty of habitability has roots in sale contracts, the warranty exists independently and does not require privity of contract. *Pratt I*, 404 Ill. App. 3d at 617 (citing *Redarowicz*, 92 Ill. 2d at 183). Because the implied warranty of habitability is implied in law and not a product of a contractual agreement, to say that the seller "extends" the warranty to the purchaser is a misnomer; the law extends the warranty to the purchaser. See *Redarowicz*, 92 Ill. 2d at 183 (referring to the implied warranty of habitability as a "judicial innovation that has evolved to protect purchasers of new houses upon discovery of latent defects in their homes").

¶ 35    Because *Pratt I* permits a plaintiff to pursue a builder for breach of the implied warranty of habitability regardless of the solvency status of the developer-vendor and because the holding in *Minton* does not apply in this case, the trial court's determination that the Board's pursuit of the LLC's insurance precludes its pursuit of Trapani constituted error and warrants reversal. For the same reasons, it is unnecessary to assess whether the trial court's ruling qualified as a proper application of the election of remedies doctrine or to entertain the subcontractors' argument that the holding in *Minton* should be revisited.

¶ 36    It should be noted that although Count VI of the Board's second amended complaint alleged breach of the implied warranty of habitability, count VII alleged breach of the implied warranty of good workmanship. The Board requested reversal of the dismissal of both counts VI and VII on the same grounds, and the trial court dismissed the two counts for the same reasons. Neither Trapani nor the subcontractors objected to this request on the grounds that a different analysis applies to the Board's claim for breach of the implied warranty of good workmanship. Rather, Trapani and the subcontractors make no distinction between the two counts when arguing that the trial court's dismissal of the counts should be affirmed. Accordingly, any contention that the two counts require separate and distinct analysis is waived, and we do not offer any opinion on if and to what extent a claim for breach of implied warranty of habitability differs from a claim for breach of implied warranty of good workmanship.

¶ 37                    II. Appeal No. 1-14-3953 (*LLC v. Trapani*, *et al.*)

¶ 38    In its appeal, the LLC argues that the trial court erred in dismissing its amended third-party complaint against Trapani for lack of standing and in denying its motion for leave to file a second amended third-party complaint. Because we conclude that the bankruptcy trustee's assignment of the claim against Trapani to the LLC revested the LLC with standing *nunc pro tunc*, we agree with the LLC's former contention.

¶ 39    Trapani's Motion to Dismiss did not identify whether it was brought pursuant to section 2-615 (735 ILCS 5/2-615 (West 2014)) or section 2-619 (735 ILCS 5/2-619 (West 2014)) of

the Code of Civil Procedure. Presumably, Trapani intended to bring its motion pursuant to section 2-619, as such is the appropriate vehicle for arguing lack of standing. *Glisson v. City of Marion*, 188 Ill. 2d 211, 220 (1999). Orders dismissing a matter for lack of standing are reviewed *de novo*. *Id.*

¶ 40    The LLC argues that it did not lack standing to bring its third-party claim against Trapani because (1) the insurance proceeds that were sought by the Board were not part of the bankruptcy estate and any recovery obtained on the LLC's amended third-party complaint would simply offset the insurance companies' liability, and (2) even if the insurance proceeds were properly considered part of the bankruptcy estate, the bankruptcy trustee abandoned any claims it had against Trapani by assigning them to the LLC. Because we agree with the latter, we need not address the former.

¶ 41    Although standing is typically determined from the allegations of the complaint on the date that suit is commenced (*People ex rel. Lee v. Kenroy, Inc.*, 54 Ill. App. 3d 688, 692 (1977)), if a party to a lawsuit files for bankruptcy, that party is divested of standing to pursue the claim (see *Dailey v. Smith*, 292 Ill. App. 3d 22, 25 (1997)), even if suit has already been filed. This is because once a bankruptcy action is instituted, all unliquidated lawsuits become part of the bankruptcy estate and only the bankruptcy trustee has standing to pursue them. *Id.* at 25-26. If, however, the bankruptcy trustee abandons or assigns property, then the property reverts back to the debtor in the same condition as if a bankruptcy trustee had never been appointed. *Buller v. Buller*, 9 Ill. App. 3d 125, 126-27 (1973); see also *In re Dewsnup*, 908 F.2d 588, 590 (10th Cir. 1990) (abandoned property "reverts to the debtor and stands as if no bankruptcy petition was filed"); *Mason v. Commissioner*, 646 F.2d 1309, 1310 (9th Cir. 1980) ("When the court grants a trustee's petition to abandon property in a bankrupt's estate, any title that was vested in the trustee is extinguished, and the title reverts to the bankrupt, *nunc pro tunc*.").

¶ 42    It is undisputed that the bankruptcy trustee did not assign the claim against Trapani to the LLC until after the LLC had filed its amended third-party complaint. In addressing the effect of that subsequent assignment, the trial court stated as follows:

> "I think the case law—you can't come back and bring standing into play. You can't—you either have it at the time you file your suit or you don't. You can't come back and say, well, I have it now so, you know, we're all good. We can move forward.
>
> You didn't have it. It was a claim of the trustee. The trustee did not file it and therefore it's dismissed."

Although this conclusion might be correct in a case where standing is affected by something other than bankruptcy, it is not correct where standing was divested due to the filing of bankruptcy and the claim is later abandoned or assigned by the trustee. Rather, once a claim is assigned back to the debtor by the bankruptcy trustee, standing revests in the debtor, as if the debtor had never lost standing in the first place. See *Hoth v. Stogsdill*, 210 Ill. App. 3d 659, 667 (1991); see also *Morlan v. Universal Guaranty Life Insurance Co.*, 298 F.3d 609, 617 (7th Cir. 2002) ("And actually, despite the attention we've been paying to getting the sequence [of the abandonment versus the filings in the underlying claim] right, the sequence doesn't matter; for when property of the bankrupt is abandoned, the title 'reverts to the bankrupt, nunc pro tunc, so that he is treated as having owned it continuously.' " (quoting *Wallace v. Lawrence Warehouse Co.*, 338 F.2d 392, 394 n.1 (9th Cir. 1964))).

¶ 43    In *Hoth*, the plaintiff brought an action for legal malpractice while her bankruptcy action was still pending. The defendants moved to dismiss her claim, arguing that the legal

malpractice claim belonged to the bankruptcy estate and that unless and until the bankruptcy trustee abandoned the claim, the plaintiff lacked standing to pursue it. *Hoth*, 210 Ill. App. 3d at 661. The trial court agreed and dismissed the plaintiff's action with prejudice. After the trial court's dismissal, the bankruptcy court entered an order authorizing the bankruptcy trustee to assign to the plaintiff whatever interest the trustee had in the legal malpractice claim. Relying on this order, the plaintiff filed a motion to reconsider in the trial court. After the plaintiff filed her motion to reconsider but before the trial court ruled on it, the trustee formally assigned the legal malpractice claim to the plaintiff. Nevertheless, the trial court denied the plaintiff's motion to reconsider. *Id.* at 662.

¶ 44    On appeal, the appellate court reversed the trial court's dismissal of the plaintiff's claim. In doing so, the court observed that at the hearing on the plaintiff's motion to reconsider, the plaintiff presented to the trial court the bankruptcy court's order authorizing the assignment of the legal malpractice claim. According to the appellate court, that order made clear that the plaintiff then had standing to pursue the legal malpractice claim. *Id.* at 667. Therefore, the trial court should have granted the plaintiff's motion to reconsider and vacated its order dismissing the plaintiff's case. *Id.* at 668.

¶ 45    Like in *Hoth*, the amended third-party complaint in this case was filed at a time when the LLC arguably lacked standing. Also like in *Hoth*, the bankruptcy trustee did not assign the claim to the LLC until after dismissal proceedings had been instituted. In fact, in *Hoth*, the assignment did not occur until after the plaintiff's case had already been dismissed with prejudice. Nevertheless, upon the assignment from the trustee, the plaintiff in *Hoth* was revested with standing, such that the proper action for the trial court was to vacate its dismissal and allow the plaintiff to proceed with her complaint. Likewise, upon being presented with the bankruptcy trustee's assignment of the present claim to the LLC, the proper action for the trial court to take was to deny the motion to dismiss and permit the LLC to proceed on its amended complaint.

¶ 46    Trapani argues that because the LLC lacked standing at the time it filed its amended complaint, the amended complaint is a nullity and never legally in existence, *i.e.*, void *ab initio*. In support of this proposition, Trapani relies on *Bavel v. Cavaness*, 12 Ill. App. 3d 633 (1973). That case, however, did not involve a situation where the plaintiff lacked standing to file suit, but instead involved a suit filed against the estate of a deceased person, along with its executors and heirs. The court concluded that the suit was a nullity because the purported defendant—the estate—did not fall within the definition of a "party," *i.e.*, a natural or artificial person who has the capacity to be sued. *Id.* at 637. In the present case, Trapani does not argue that the LLC does not qualify as a "party" or lacks the legal capacity to sue or be sued but instead argues only that the LLC lacked standing to pursue the claims found in the amended third-party complaint. See generally *Aurora Bank FSB v. Perry*, 2015 IL App (3d) 130673, ¶ 17 (outlining the difference between standing and capacity to sue and be sued). As discussed above, even if the LLC lacked standing at the time it filed its amended third-party complaint, it regained standing through the bankruptcy trustee's assignment, and accordingly, the trial court should have denied the motion to dismiss.

¶ 47    Because the trial court should not have granted Trapani's motion to dismiss, there is no need for us to address the question of whether the LLC should have been allowed to amend its complaint in an attempt to cure the perceived standing defect.

¶ 48                    III. Appeal No. 1-15-0033 (*Trapani v. Subcontractors*)

¶ 49      Trapani also appealed from the trial court's decisions. Trapani's appeal, however, is not based on a claim that the trial court erred in dismissing counts VI and VII of the Board's second amended complaint or the LLC's amended third-party complaint. Rather, Trapani appealed on the basis that if the Board and the LLC are successful in their appeals, Trapani's claims against the subcontractors should be reinstated. Because the resolution of Trapani's appeal depended entirely on the outcome of the Board's and the LLC's appeals, the parties agreed that no briefing was necessary on Trapani's appeal.

¶ 50      With respect to Trapani's third-party claims stemming from the complaint filed by the Board, the trial court's order of December 4, 2013, indicates that Stock, Boyle, and Howard were dismissed pursuant to the arguments regarding *Minton* in Stock's motion to dismiss Trapani's amended third-party complaint. Then, after *sua sponte* reversing its previous ruling and granting Trapani's motion to dismiss, the trial court ordered that Trapani and all subcontractors be dismissed with prejudice. Presumably, the dismissal of all subcontractors, even those who had not filed a motion to dismiss, was a result of the dismissal of the Board's claims against Trapani. Because we have concluded that *Minton* does not apply to the present case and that the dismissal of the Board's claims against Trapani must be reversed, so too must the dismissal of Trapani's claims against the subcontractors.

¶ 51      Likewise, relying on the dismissal of the LLC's amended third-party complaint against Trapani, the trial court dismissed Trapani's fourth-party claims against the subcontractors. Because we conclude that the trial court's dismissal of the LLC's amended third-party complaint against Trapani must be reversed, the trial court's dismissal of Trapani's fourth-party claims against the subcontractors must also be reversed.

¶ 52                                        CONCLUSION

¶ 53      We conclude that the trial court erred in dismissing counts VI and VII of the Board's second amended complaint because the holding in *Pratt I* permits a plaintiff to bring a claim for breach of implied warranty of habitability against a builder absent a showing that the developer-vendor is insolvent. We also conclude that the trial court erred in dismissing the LLC's amended third-party complaint because the bankruptcy trustee's assignment of any claims against Trapani cured any lack of standing that might have resulted from the LLC's filing of bankruptcy. Because the dismissals of the claims brought by the Board and the LLC must be reversed, so too must the dismissal of Trapani's fourth-party claims be reversed.

¶ 54      The judgment of the circuit court is reversed, and the matter is remanded to the Circuit Court of Cook County for further proceedings consistent with this order.

¶ 55      Reversed and remanded.