2021 IL App (1st) 200855-U

No. 1-20-0855

Second Division
December 28, 2021

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

_____

| | | |
|---|---|---|
| | ) | Appeal from the |
| DIRECT AUTOMOBILE INSURANCE | ) | Circuit Court of |
| COMPANY, | ) | Cook County. |
| | ) | |
| Plaintiff-Appellant, | ) | |
| | ) | |
| v. | ) | No. 16 CH 5766 |
| | ) | |
| MIHANE KRSO, BAJRA KRSO, AUDREY | ) | |
| PAUL, and TRAVELERS HOME & | ) | |
| MARINE INS., | ) | Honorable |
| | ) | Pamela McLean Meyerson |
| Defendants-Appellees. | ) | Judge, presiding. |

_____

JUSTICE COBBS delivered the judgment of the court.
Justices Howse and Lavin concurred in the judgment.

**ORDER**

¶ 1   *Held*:   The judgment of the circuit court in a declaratory action is affirmed. The court did not err in granting summary judgment to defendant where plaintiff insurance company did not timely rescind its policy with its insured.

¶ 2 This appeal arises from a declaratory judgment action filed by plaintiff-appellant Direct Automobile Insurance Company (Direct Auto) on April 25, 2016. The declaratory action was related to an underlying personal injury lawsuit resulting from an automobile accident between Mihane Krso (Mihane), who was allegedly insured by Direct Auto, and Audrey Paul, who was insured by The Travelers Home and Marine Insurance Company (Travelers). The circuit court ultimately awarded summary judgment for Travelers and ordered Direct Auto to defend Mihane in the underlying personal injury suit. Direct Auto now appeals, and we affirm.

¶ 3                                          I. BACKGROUND

¶ 4 On December 6, 2012, Krso and Paul were in an automobile accident in Wheeling, Illinois. The record shows that shortly before the accident in question, Mihane applied for a 6-month insurance policy with Direct Auto. The policy took effect on October 20, 2012 and was set to expire on April 20, 2013. The policy lists Mihane and her husband, Bajro Krso, as the only covered drivers and a 2003 Chevrolet Cavalier as the only covered vehicle.

¶ 5 Following the accident, on April 19, 2013, Direct Auto sent Mihane a letter (the April 2013 letter) stating that her policy was null and void due to her "material misrepresentation" of failing to disclose her son, Edin Krso, as a household member in her policy application. Direct Auto's letter also informed Krso that:

> "if a lawsuit is filed against and you are served in this matter, then you must provide the company with a copy of the lawsuit. That portion of your policy relating to the defense of any lawsuit that may be filed against you is a broader coverage than the other coverage's [*sic*] afforded under the policy. If you are sued in this matter and served with notice, you must notify the company of the lawsuit and the company will then advise as to whether the

company will defend you. Failure to notify the company prior to a judgment against you will void any responsibility the company has of defending you."

That same day, Direct Auto also wrote to Paul that it would not pay her claim based on the recission of Mihane's policy.

¶ 6    On November 19, 2014, Paul filed the underlying suit against Mihane seeking damages for injuries sustained in the accident. On December 19, 2014, Direct Auto sent Krso a letter explaining that it would defend the lawsuit on her behalf and that she was obligated to cooperate with Direct Auto and the law firm it hired to defend the suit. This letter did not mention the previous recission letter.

¶ 7    Some 16 months later, on April 25, 2016, Direct Auto initiated this declaratory action seeking a judgment that it owed Mihane no liability coverage in relation to Paul's lawsuit. Specifically, Direct Auto alleged that Mihane's policy application failed to list Edin as an additional household member and potential driver. The declaratory complaint named Mihane, Bajro, Paul, and Travelers as defendants. The Krsos filed *pro se* answers denying that their policy was properly rescinded. Travelers filed an answer admitting many of Direct Auto's allegations, but stating that whether a recission occurred was "a statement of law that requires no answer." Travelers' answer also raised as affirmative defenses that Direct Auto's delay in bringing the declaratory action operated as an estoppel and waiver of the right to deny coverage under the policy.

¶ 8    Paul initially appeared through the law firm Collison & O'Connor, Ltd (the O'Connor firm) in February 2017. Instead of answering the complaint, Paul signed a "Stipulation to be Bound" on May 26, 2017. The stipulation was entered as an order that same day. The order provided:

"**Stipulation to be Bound:**

Defendant Audrey Paul ("Paul") agrees to be bound by the Order and Declaration concerning coverage to be entered at the conclusion of this case, and Paul is making no claim of coverage. As a consequence, Plaintiff Direct Auto Insurance Company waives costs on same as to Paul. Further, Direct Auto Insurance Company will send formal notice to Paul of Orders and events, but will not seek to default Paul.

**IT IS ORDERED**

Defendant Audrey Paul will be bound by the Order and Declaration concerning Coverage which will be entered at the conclusion of this case."

¶ 9    Several months later, on September 18, 2017, Paul's counsel at the O'Connor firm wrote to counsel for Direct Auto, asserting that Direct Auto had violated the stipulation by filing various pleadings without notice to Paul. The letter also stated that Direct Auto was "attempting to misconstrue the stipulation" by claiming that Paul was no longer seeking to pursue damages from Mihane or Direct Auto in the underlying suit.

¶ 10    On October 24, 2017, Paul filed a "Motion to Clarify" the stipulation, arguing that she was simply agreeing to abide by the outcome of the declaratory action and was not waiving her right to seek damages from either Mihane or Direct Auto. Paul also contended that the language stating that she was "making no claim for coverage" meant that she was not claiming to be insured by Direct Auto, the plaintiff in the declaratory action. Accordingly, Paul sought an order interpreting the stipulation in her favor or, alternatively, to modify the stipulation to omit the phrase "and Paul is making no claim of coverage."

¶ 11    Direct Auto filed a response, arguing that the stipulation unambiguously meant that Paul waived her right to pursue Direct Auto, and that the stipulation order should not be vacated or modified for mutual mistake because there was no mistake as to the legal effect of the language

on Direct Auto's part. Direct Auto also noted that while its counsel drafted the language of the stipulation, Paul was the one who requested a proposed stipulation and signed it with the advice of her own counsel.

¶ 12    After a hearing on the matter, the circuit court agreed with Paul's interpretation, ruling that the stipulation meant that Paul would not participate in the declaratory proceedings, but did not waive her right to pursue damages from Mihane or Direct Auto in the underlying case.

¶ 13    On July 10, 2018, Direct Auto filed a first amended complaint, adding allegations that, in addition to failing to disclose Edin on the policy application, Mihane also failed to disclose two other vehicles and another son, Edon Krso. In its answer to the amended complaint, Travelers denied that Mihane's policy was rescinded and again asserted its affirmative defenses of waiver and estoppel. In reply, Direct Auto filed a motion to dismiss Travelers' affirmative defenses, which the court treated as a motion for summary judgment. In particular, Direct Auto argued that Travelers had no "standing" to raise defenses for the benefit of Mihane, a party to whom Travelers was "directly adverse." Direct Auto also contended that neither waiver nor estoppel applied in this case because Mihane's policy was timely rescinded within one year of its effective date.

¶ 14    On December 18, 2018, after hearing oral argument, the circuit court found that (1) Travelers had standing to bring the motion and (2) Direct Auto was not entitled to summary judgment as a matter of law. Specifically, the court ruled that Direct Auto's April 2013 letter "did not operate as an effective rescission as it advised Ms. Krso that she has ongoing obligations under the policy."

¶ 15    Direct Auto filed a motion to reconsider, arguing that its April 2013 letter constituted a reservation of rights. In its response, Travelers contended that it was improper for Direct Auto to raise a new "reservation of rights" argument for the first time in a motion for reconsideration and

that, in any event, the April 2013 letter could not reasonably be interpreted as a reservation of rights.

¶ 16    Around the same time, Travelers also filed its own motion for summary judgment on the basis that the policy was not properly rescinded per the court's December 18, 2018 order. After a response and a reply, Direct Auto filed a motion to strike portions of Travelers' reply, which the court allowed to stand as a sur-reply.

¶ 17    On August 16, 2019, while the summary judgment pleadings were still pending, Travelers filed an emergency motion to spread of record that Paul had died on September 9, 2018. According to the motion, Travelers did not learn of Paul's death until being informed by Paul's former counsel at the O'Connor firm on August 1, 2019. Travelers' motion acknowledged that Paul could no longer be a party to declaratory action, but that her personal representative could substitute as a party. However, as Paul had already agreed to be bound by the court's declaratory judgment, Travelers concluded that any personal representative would be bound as well.

¶ 18    In response, Direct Auto argued the circuit court should deny the emergency motion and stay the proceedings for lack of jurisdiction because no personal or special representative had been appointed for Paul. On August 20, 2019, the circuit court granted Travelers' motion and spread Paul's death of record.

¶ 19    The case was continued for status to September 16, 2019. On that date, attorney Kevin O'Connor appeared and informed the court that Paul had filed for Chapter 7 bankruptcy in April 2015. As relevant here, the record shows that on Schedule B of Paul's bankruptcy petition, she listed a "Personal Injury Suit-DOL:12/6/2012; Paul v. Krso, 14-L-11980, Cook County, Illinois" under the category of "Other contingent and unliquidated claims of every nature." Paul listed the

current value of the suit as "[u]nknown" and claimed the $15,000 personal exemption allowed by Illinois law.

¶ 20    Attorney O'Connor further informed the circuit court that on February 3, 2017, the bankruptcy court approved the bankruptcy trustee, Joseph Cohen's, request to authorize the O'Connor firm to pursue the underlying injury claim on the trustee's behalf. O'Connor also advised the circuit court that the underlying case had been stayed, but that he would seek to substitute Paul's name for that of the bankruptcy trustee once the stay was lifted. O'Connor took the position that a personal or special representative need not be appointed for Paul in either of the state cases because, as the bankruptcy preceded the death, the underlying claim was "now an asset of the trustee in bankruptcy."

¶ 21    On September 23, 2019, Direct Auto filed a motion objecting to jurisdiction on the basis of Paul's bankruptcy and death. Direct Auto requested that the circuit court stay the declaratory proceedings and strike O'Connor's appearance.

¶ 22    Meanwhile, on November 18, 2019, the circuit court in the underlying case removed the matter from the insurance stay calendar, spread Paul's death of record, and ordered that the complaint be amended on its face to substitute "Joseph Cohen, trustee in Bankruptcy of Audrey Paul, deceased, as Administrator to Collect, for Plaintiff, Audrey Paul." The matter was then returned to the insurance stay calendar pending resolution of the declaratory action.

¶ 23    Two days later, on November 20, 2019, the O'Connor firm filed a motion to substitute the bankruptcy trustee for Paul as a necessary party to the declaratory action. Direct Auto objected to the motion and, on November 22, 2019, filed a motion in the bankruptcy court requesting the court vacate O'Connor's appointment as special counsel and find that Paul was estopped from pursuing

declaratory relief or a personal injury claim.[1] The bankruptcy court denied Direct Auto's motion, stating that Paul's claim became property of the bankruptcy estate upon the filing of the petition, and that under the Bankruptcy Code, her death had "no effect on the bankruptcy case at all." However, the bankruptcy judge also stated that any issues with the trustee's standing in state court were for a state court to determine.

¶ 24    On December 9, 2019, the declaratory action court granted the motion to substitute the bankruptcy trustee for Paul in the declaratory case over Direct Auto's objection. The court ordered Direct Auto to file an amended complaint to reflect the proper parties by December 16, 2019.

¶ 25    Direct Auto next filed a motion for leave to file an amended response to Travelers' summary judgment motion and for leave to file a second amended declaratory complaint adding allegations about the effects of Paul's death and bankruptcy. After a hearing (the transcript of which is not included in the record on appeal), the court denied the motion and ordered Direct Auto to file a third amended declaratory complaint solely altering the name of the parties to substitute "Joseph Cohen, trustee in Bankruptcy of Audrey Paul, deceased, as Administrator to Collect for Plaintiff, Audrey Paul."

¶ 26    On April 10, 2020, the trial court issued a written order in which it denied Direct Auto's motion to reconsider the December 18, 2019 order and granted summary judgment in favor of Travelers. Regarding the motion to reconsider, the circuit court opined that it was improper for Direct Auto to raise the argument that it was defending Mihane under a reservation of rights for

---

[1] On April 5, 2021, Travelers filed a motion requesting this court take judicial notice of certain certified transcripts of proceedings in the bankruptcy court. We took the motion with the case, and now grant the motion. *LB Steel, LLC v. Carlo Steel Corporation*, 2018 IL App (1st) 153501, ¶ 22 n.4 (this court may take judicial notice of public documents that are included in the records of other courts, including bankruptcy courts).

the first time in its motion to reconsider. Nevertheless, the court considered the reservation of rights argument and rejected it. In particular, the court explained that although an insurer may defend against a claim under a reservation of rights while simultaneously pursuing a declaratory action, that was not what occurred in this case. Instead, the court found that Direct Auto defended against Paul's claim without a reservation of rights and waited 16 months before filing a declaratory action in April 2016.

¶ 27     Based on its ruling regarding the effect of the April 2013 letter, the court further found that Travelers was entitled to summary judgment as a matter of law. Specifically, the court found that since the April 2013 letter did not rescind the policy, there was no genuine dispute that a timely recission did not occur. Accordingly, the court found that Direct Auto had a duty to defend and indemnify Mihane in the underlying lawsuit.

¶ 28     Direct Auto filed a motion to clarify and reconsider the summary judgment order. During the pendency of that motion, Travelers and the bankruptcy trustee agreed to a settlement whereby Travelers paid $75,000 in exchange for the trustee's release of any claims that might be had under the underinsured/uninsured motorist (UI/UM) portion of Paul's Travelers policy. Direct Auto objected in the bankruptcy court, again arguing that Illinois law required the appointment of a personal or special representative in order to seek recovery against Mihane or Direct Auto. On May 18, 2020, the bankruptcy court approved the settlement over Direct Auto's objection.

¶ 29     On July 24, 2020, the circuit court denied Direct Auto's motion to reconsider the summary judgment order, except to the extent the court clarified that Direct Auto's duty of indemnification would ripen only if a judgement was entered against Mihane in the underlying suit.

¶ 30 On August 6, 2020, Direct Auto filed a notice of appeal from, *inter alia*, the orders (1) allowing the bankruptcy trustee to substitute for Paul, (2) granting Travelers summary judgment, and (3) denying reconsideration of the summary judgment order.

¶ 31                                    II. ANALYSIS

¶ 32                            A. Stipulation to be Bound

¶ 33 On appeal, we first address Direct Auto's argument regarding the stipulation to be bound. Direct Auto argues that the language of the stipulation that "Paul is making no claim for coverage" meant that Paul waived any right to pursue a claim against Direct Auto. Thus, Direct Auto concludes that Travelers, as Paul's subrogee, also has no right to pursue the claim. Travelers, on the other hand, contends that Paul was merely agreeing to be bound by the outcome of the declaratory action and stating that she was not claiming to be insured by Direct Auto.

¶ 34 Before we can reach the merits of this issue, however, we must first consider our jurisdiction. *Xcel Supply, LLC v. Horowitz*, 2018 IL App (1st) 162986, ¶ 26 (appellate court must always consider its own jurisdiction). Travelers contends that we lack jurisdiction to consider the matter because the circuit court's order ruling on the effect of the stipulation was not included on Direct Auto's notice of appeal. We agree.

¶ 35 The filing of a notice of appeal is the jurisdictional step which initiates appellate review. *General Motors Corp. v. Pappas*, 242 Ill. 2d 163, 176 (2011). Illinois Supreme Court Rule 303(b)(2) (eff. July 1, 2017) provides that the notice of appeal "shall specificy the judgment or part thereof or other orders appealed from and the relief sought from the reviewing court." Thus, this court has jurisdiction to consider only the judgments or parts of judgments specified in the notice of appeal. *Pappas*, 242 Ill. 2d at 176. A notice of appeal must be considered as a whole to determine whether it fairly and adequately advises the appellee of the nature of the appeal. *Id.*

Where a notice of appeal has not been properly filed, this court must dismiss the appeal for lack of jurisdiction. *Id.*

¶ 36    Here, the circuit court issued its ruling on the meaning of the stipulation on February 8, 2018. However, Direct Auto's notice of appeal does not list that date or reference the ruling or stipulation in any way. Rather, the notice lists several other orders and "REVERSE SUMMARY JUDGMENT" as the only requested relief. We therefore lack the jurisdiction to consider Direct Auto's arguments related to the circuit court's ruling on the effect of the stipulation.

¶ 37                      B. Substitution of the Bankruptcy Trustee

¶ 38    Direct Auto next argues that the circuit court erred by allowing Cohen, as the bankruptcy trustee, to substitute for Paul in the declaratory action. According to Direct Auto, it was necessary to name either a special or personal representative to represent Paul's interest after her death. As no such representative was named, Direct Auto concludes that "the deceased Paul no longer exists under Illinois law in the sense of filing suits or defending suit." Moreover, because Travelers' rights against Mihane and Direct Auto were derivative of Paul's, Direct also maintains that "[a]ny rights Travelers had 'standing in the shoes' of Paul died with the failure to appoint a special or personal representative."

¶ 39    In addressing these arguments, we first note that Direct Auto advances them with very little citation to relevant authority. See *State by Raoul v. Hitachi, Ltd.*, 2021 IL App (1st) 200176, ¶ 49 (appellant's failure to cite relevant authority violates Illinois Supreme Court Rule 341 and may cause the party to forfeit consideration of the issue.) Additionally, while Direct Auto's arguments in this regard focus on Paul's death during the pendency of the litigation, they either ignore or misunderstand the importance of her bankruptcy.

¶ 40    The filing of a bankruptcy petition initiates the assertion of the bankruptcy court's jurisdiction over all the debtor's assets and property. *Dailey v. Smith*, 292 Ill. App. 3d 22, 24 (1997). The filing of a petition also creates a bankruptcy estate, which section 541 of the Bankruptcy Code defines broadly as "all legal or equitable interests of the debtor in property as of the commencement of the case." 11 U.S.C. § 541(a)(1) (2012). Notably, "once a bankruptcy action is initiated, all unliquidated lawsuits [in which the debtor has a potential claim] become part of the bankruptcy estate." *Board of Managers of 1120 Club Condominium Association v. 1120 Club, LLC*, 2016 IL App (1st) 143849, ¶ 41. Thus, "if a party to a lawsuit files for bankruptcy, that party is divested of standing to pursue the claim" and only the bankruptcy trustee then has standing to pursue the suit. *Id.*

¶ 41    Here, it is undisputed that Paul filed for bankruptcy while her underlying personal injury lawsuit was still pending. Accordingly, Paul's interest in the unliquidated, contingent claim became part of the bankruptcy estate for the trustee to pursue. As such, Direct Auto's contention that a special representative should have been appointed for the benefit of Paul's heirs and legatees is without merit. Once Paul filed for bankruptcy, the claim became part of the bankruptcy estate for the trustee to wield exclusively for benefit of Paul's creditors.

¶ 42    We find Direct Auto's argument that the bankruptcy trustee was required to appoint his own special representative to pursue the estate's claims in state court on his behalf similarly unpersuasive. Although Direct Auto correctly notes that the trustee's standing in state court is a matter of state law, Direct Auto does not cite to any Illinois case to support its assertions about the requirement of a special representative. Rather, as previously noted, Illinois courts have held that only the bankruptcy trustee has standing to pursue unliquidated lawsuits pending at the time the bankruptcy petition is filed. *1120 Club*, 2016 IL App (1st) 143849, ¶ 41.

¶ 43    In light of the foregoing, we find that the circuit court did not err in allowing the bankruptcy trustee to substitute for Paul. Indeed, section 2-1008(a) of the Code of Civil Procedure specifically provides that where an interest in a lawsuit transfers on account of a bankruptcy, "the action does not abate, but on motion an order may be entered that the proper parties be substituted or added, and that the cause or proceeding be carried on with the remaining parties and new parties [.]" 735 ILCS 5/2-1008(a) (West 2016). Here, for reasons we have explained, the bankruptcy petition caused a transfer of interest from Paul to the bankruptcy estate. The trustee therefore became a necessary party in the declaratory action, and the court was correct to substitute the parties accordingly.

¶ 44                                    C. Estoppel

¶ 45    Direct Auto further argues that Paul should have been judicially estopped from pursuing her lawsuit "by her failure to fully disclose her claims above the [$15,000 personal] exemption." Specifically, Direct Auto acknowledges that Paul scheduled her lawsuit in her bankruptcy petition, but contends that she failed to adequately disclose her related UIM/UM claim.

¶ 46    Judicial estoppel is an equitable doctrine to be invoked at the court's discretion. *Seymour Collins*, 2015 IL118432, ¶ 36. The doctrine applies where a litigant in a proceeding takes a position, benefits from that position, and then seeks to take a contrary position in a later proceeding. *Id.* Judicial estoppel is designed to protect the integrity of the judicial process by preventing litigants from changing positions simply according to the exigencies of a particular moment. *Id.*

¶ 47    Our supreme court has set forth a two-step process for a trial court to determine whether to invoke judicial estoppel. First, the court must determine whether the following elements are present: (1) the party to be estopped has taken two positions, (2) that are factually inconsistent (3)

- 13 -

in separate judicial or quasi-judicial proceedings, (4) intending for the trier of fact to accept the truth of the facts alleged, and (5) have succeeded in the first proceeding and received some benefit from it. *Id.* ¶ 47. Second, if all these elements are established, the court must then exercise its discretion to determine whether to apply judicial estoppel. *Id.* Among the factors for the court to consider in this step are the significance of the party's actions in the first proceeding and whether there is affirmative evidence that the party intended to deceive or mislead. *Id.*

¶ 48 Applying these principles to the present case, it is evident that the circuit court did not abuse its discretion in declining to apply judicial estoppel. First, it is far from clear that Paul even took inconsistent positions. See *Knott v. Woodstock Farm & Fleet, Inc.*, 2017 IL App (2d) 160329, ¶ 26 (debtor's positions not factually inconsistent where he disclosed a "possible claim" for personal bodily injury in his bankruptcy petition). Unlike the cases invoking estoppel where the debtor failed to disclose a potential claim to the bankruptcy court, Paul listed her lawsuit against Mihane on the bankruptcy schedules from the outset. For example, in *Smith v. Integrated Management Service*, 2019 IL App (3d) 180576, ¶¶ 6-7, the sole case Direct Auto cites on this issue, the debtor entirely failed to disclose a prepetition personal injury suit in his bankruptcy, even going so far as to deny ever having filed for bankruptcy in that injury suit. This is obviously inapposite to the present case, where Paul's personal injury suit was fully scheduled in her bankruptcy petition.

¶ 49 More importantly, Direct Auto has presented no evidence to suggest that Paul intentionally meant to deceive the bankruptcy court by not disclosing the UIM/UM claim. In *Seymour*, our supreme court refused to presume the debtors' failure to disclose a pending lawsuit in bankruptcy proceedings was the result of deliberate manipulation. *Seymour*, 2015 IL 118432, ¶ 62. We take the same path here. Additionally, we note that the bankruptcy trustee was clearly aware of Paul's

UIM/UM claims, as the trustee participated in the state court cases through the O'Connor firm as early as February 2017 and reached a settlement with Travelers on the UIM/UM claims in the amount of $75,000. Thus, it was well within the circuit court's discretion to decline the application of judicial estoppel.

¶ 50                    D. Summary Judgment/Effect of the Recission Letter

¶ 51    Direct Auto next argues, in the alterative, that the circuit court erred granting summary judgment for Travelers based on an erroneous finding that Mihane's Direct Auto policy was not properly rescinded. In particular, Direct Auto contends that (1) it timely rescinded the policy via the April 2013 letter and (2) it properly defended the underlying case under a reservation of rights while simultaneously pursuing the declaratory action.

¶ 52    We disagree with Direct Auto on both points. However, before explaining why, we briefly set forth the familiar standards of review relevant to a grant of summary judgment. Summary judgment is a drastic means of resolving litigation that should not be utilized unless the moving party's right to judgment is clear and free from doubt. *Seymour*, 2015 IL 118432, ¶ 42. Summary judgment is appropriate only where there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. *Id.* When considering a motion for summary judgment, a trial court must construe the record strictly against the movant and liberally in favor of the nonmovant. *Id.* A grant of summary judgment is reviewed *de novo*. *Id.*

¶ 53    The central issue for the circuit court to decide in this declaratory action was whether the April 2013 letter rescinded Mihane's Direct Auto policy such that Direct Auto was under no duty to defend or indemnify her in the underlying lawsuit. Section 154 of the Illinois Insurance Code allows an insurer to rescind an insurance policy in the case of a material misrepresentation on the policy application. 215 ILCS 5/154 (West 2012). When seeking to rescind a policy for a material

misrepresentation, an insurer must prove that (1) the application contains a false statement and (2) the false statement was either made with the intent to deceive or, regardless of intent, materially affected the risk assumed by the insurer. *Direct Auto Insurance Co. v. Koziol*, 2018 IL App (1st) 171931, ¶ 11. Additionally, the rescission must occur within the lesser of (1) one year of the policy's effective date or (2) one policy term. 215 ILCS 5/154 (West 2012).

¶ 54    The parties apparently do not dispute that the omissions in the policy application constituted material misrepresentations. Nor can there be any dispute that the April 19, 2013 letter was sent prior to the expiration of the policy term, which occurred on April 20, 2013. The question, then, becomes whether the April 2013 letter was sufficient to rescind the policy. We find that it was not.

¶ 55    A material misrepresentation on an insurance application renders the policy merely voidable, rather than void *ab initio*, meaning that the insurer may waive the right to recission if it is not properly and promptly invoked. *Illinois State Bar Association Mutual Insurance Co. v. Coregis Insurance Co.*, 355 Ill. App. 3d 156, 167 (2004). We agree with the circuit court that Direct Auto's conduct was inconsistent with an invocation of its right to rescind. Although the April 2013 letter stated that Direct Auto considered the policy null and void, it also informed Krso that she had ongoing obligations under that same policy—namely the duty to notify the company and provide it with a copy of any lawsuit filed against her. These ongoing obligations are inconsistent with a recission. See *id.* at 165 (the party seeking recission must restore the other party to the position it was in before the contract was formed). Thus, the April 2013 letter did not rescind the policy, and Direct Auto took no further action to rescind prior to the April 20, 2013 deadline imposed by Section 154.

¶ 56    Direct Auto contends it did not take a position inconsistent with recission because an insurer may defend an insured under a reservation of rights while simultaneously pursuing a declaratory judgment that it does not owe coverage. While this is undoubtedly true as a matter of Illinois law (see, *e.g.*, *IMC Global v. Continental Insurance Co.*, 378 Ill. App. 3d 797, 809 (2007)), that is not what happened in this case. A proper reservation of rights must adequately inform the insured of the rights that the insurer intends to reserve. *Mobil Oil Corporation v. Maryland Casualty Co.*, 288 Ill. App. 3d 743, 754 (1997). The reservation must also make specific reference to the policy defense asserted by the insurer and to the potential conflict of interest such that the insured is able to intelligently decide whether to rely on the insurer or hire independent counsel. *Id.* "Absent a reservation of rights, an insurer waives all questions of policy coverage when it assumes an insured's defense and recognizes the continued validity of the policy." [internal quotation marks omitted] *Illinois Insurance Guaranty Fund v. Nwidor*, 2018 IL App (1st) 171378, ¶ 22. Here, nothing in Direct Auto's April 2013 letter can be construed as a reservation of rights. We also note that, despite being aware of the material misrepresentations in the policy application, Direct Auto defended Mihane in the underlying suit for some 16 months before filing the declaratory action, and only then raised the reservation of rights argument for the first time three years after that, when moving to reconsider the court's order denying it summary judgment.

¶ 57    *State Farm Fire & Casualty Co. v. Martin*, 186 Ill. 2d 367 (1999), cited by Direct Auto at oral argument, is distinguishable. There, State Farm refused to defend or indemnify Martin in an underlying wrongful death suit, and instead sought a declaratory judgment that it had no duty to do so. *Id.* at 369. Summary judgment was later entered against State Farm in the declaratory action. *Id.* However, shortly before the declaratory judgment was entered, one of the defendants in the

wrongful death suit secured a default judgment against Martin. *Id.* at 370. The remaining defendant also secured a default judgment against Martin after the declaratory judgment was entered. *Id.*

¶ 58    On appeal from the declaratory judgment, a preliminary issued was raised as to whether State Farm was estopped from denying coverage where it failed to either secure a declaratory judgment in its favor or defend its insured under a reservation of rights. *Id.* at 371. Our supreme court ruled that State Farm was not estopped, stating that "[a]n insurer will not be estopped from denying coverage merely because the underlying case proceeds to judgment before the declaratory judgment action is resolved." *Id.* at 374. Essentially, the court held that an insurer facing a complaint alleging potential coverage must either (1) defend its insured under a reservation of rights or (2) seek a declaratory judgment action that there is no coverage. *Id.* Thus, *Martin* is of little help to Direct Auto here where, although Direct Auto sought a declaratory judgment, it also defended Mihane *without* a reservation of rights.

¶ 59    Consequently, we find that Direct Auto owed Mihane a duty to defend where it is clear as a matter of law that Direct Auto did not timely rescind her policy. The circuit court therefore did not err in granting summary judgment for Travelers in the declaratory action.

¶ 60                              D. Denial of Leave to Amend

¶ 61    Finally, Direct Auto contends that the circuit court erred in denying it leave to amend its declaratory complaint to add, *inter alia*, allegations concerning the circuit court's jurisdiction to proceed without a personal or special representative after Paul's bankruptcy and death.

¶ 62    Whether to allow amendment of a complaint is within the sound discretion of the circuit court, and we will not reverse the court's denial of leave absent an abuse of that discretion. *Romito v. City of Chicago*, 2019 IL App (1st) 181152, ¶ 21. Although leave should generally be granted freely, a party's right to amend is not absolute or unlimited. *Kay v. Prolix Packaging, Inc.*, 2013

IL App (1st) 112455, ¶ 41. In determining whether to allow an amendment, a circuit court should consider the following factors: (1) whether the proposed amendment would cure a defect in the pleadings, (2) whether the opposing party would be surprised or prejudiced by the amendment, (3) whether the proposed amendment is timely, (4) whether there were previous opportunities to amend the pleading. *Id.* The ultimate test is whether allowing the amendment would further the ends of justice. *Id.*

¶ 63    In this case, Direct Auto acknowledges that the circuit court entertained "extend arguments" on the issues it wished to add in the amended pleading, but nevertheless maintains that the court "erred in not formally allowing [it] to inculcate these points into a new pleading." At the outset, we first note that our review of this issue is somewhat hampered by the lack of transcript from the January 9, 2020 hearing on Direct Auto's motion to amend. Without the transcript, it difficult to ascertain the court's reasoning or determine whether the court exercised its discretion soundly. As it is the appellant's burden to present a sufficient record for review, any doubts caused by an incomplete record must generally be resolved against the appellant. *Shen v. Shen*, 2015 IL App (1st) 130733, ¶ 126.

¶ 64    With that in mind, we cannot say from the record before us that the court abused its discretion in denying leave to amend. As Direct Auto concedes, the circuit court heard extensive arguments on the issues it sought to include in its amended pleading. In the order granting summary judgment for Travelers, the court thoroughly addressed these points and rejected Direct Auto's arguments. Thus, it is evident that the court believed the proposed amendment would not have cured the defects in Direct Auto's complaint. See *Keefe-Shea Joint Venture v. City of Evanston*, 364 Ill. App. 3d 48, 62 ("If the amendment would not have cured a defect in the pleading, the other factors are superfluous."). For reasons we have previously explained, we agree with the circuit

court's assessment. Accordingly, we find that it was within the court's discretion to deny Direct Auto leave to amend.

¶ 65

¶ 66                                    III. CONCLUSION

¶ 67     For the reasons stated, we affirm the judgment of the circuit court.

¶ 68     Affirmed.